# MARYLAND REPORTS.

## JOSEPH P. CARNELL *vs.* THE STATE OF MARY-LAND.

*Criminal Law—Obtaining Goods by False Pretences—Indictment—Evidence of Felonious Intent—Bill of Particulars.*

Where an indictment for obtaining goods by false pretences alleges that the traverser obtained from A and B by a false pretence made to them certain property " of the goods and chattels of the said" A and B with intent to defraud, etc., and the indictment is accompanied by a bill of particulars setting forth the false pretence, there is a sufficient allegation of the ownership of the goods and that A and B parted with the same in consequence of their reliance upon the false statement.

Defendant was indicted for obtaining goods by the false statement that he had money deposited in a certain bank, upon which he drew a check in payment. *Held*, that evidence that the defendant owned certain real estate is not admissible, since he was not charged with having made a false statement relative to his ownership of land, and i' he had made it, the goods were not obtained upon the faith of such st atement.

Defendant was indicted for obtaining goods by the false pretence that he had a sum of money to his credit in a certain bank. A letter in his handwriting was found in his possession addressed to the president of the bank, asking for a certificate that there was a sum to his credit, and written below the letter was what purported to be a statement signed by the cashier of the bank that the money was on deposit there. The cashier testified that he had not received the letter and had not written the certificate. The letter and the certificate were not used in obtaining the goods for which the defendant was indicted. *Held*,

1st. That the letter was admissible in evidence to prove defendant's felonious intent.

2nd. That the letter was also admissible for the purpose of showing that the defendant had devised a scheme to obtain goods wherever he could by falsely representing that he had money on deposit in that bank.

Appeal from the Circuit Court for Allegany County, (STAKE, J.) The first count in the indictment was as follows: " That Joseph P. Carnell, on, etc., by certain false pretence by him then and there made to Jacob Gross, a member of the firm of Gross Brothers, consisting of Abram P. Gross, Jacob Gross and Solomon Gross, partners, trading under the firm name and style of Gross Brothers (which said false pretence was not then and there a mere promise of future payment, and was not then and there a mere promise of future payment, not intended to be performed), unlawfully, knowingly and designedly, did obtain from the said Abram P. Gross, Jacob Gross and Solomon Gross, partners, trading under the firm name and style of Gross Brothers, one suit of clothes of the value of seven dollars, current money, of the goods and chattels of the said Abram ·P. Gross, Jacob Gross and Solomon Gross, partners, trading under the firm name of Gross Brothers, with intent then and there to defraud the said Abram P. Gross, and Jacob Gross and Solomon Gross, partners, trading under the firm name of Gross Brothers, he, the said Joseph P. Carnell, then and there well knowing the said false pretence to be false, then and there, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

The bill of particulars was, " That on January 30, 1896, Joseph P. Carnell, at that time unknown to Jacob Gross, came into the store of Gross Brothers, No. 80 Baltimore street, and offered to buy a suit of clothes; that Charles Grimes, the clerk of Gross Brothers, waited on him, and Carnell selected a suit of clothes; he then told the clerk, Charles Grimes, that he had no money with him, but would give in payment for the suit a check on the People's

National Bank of Hagerstown ; that the clerk having no authority to receive checks, took him down stairs to Mr. Jacob Gross, one of the partners of the firm of Gross Brothers, and told Mr. Gross what Carnell had said ; that Gross then took him back to his private office and asked him where he lived; Carnell said he lived at Burlington, W. Va. ; Gross said, where is that, and Carnell replied, it is above Keyser ; that Mr. Gross then asked him how he got money to Hagerstown, and Carnell replied, I sent it down by United States money orders. The president of that bank, Mr. Barnhart, is my uncle, and I have $300 in the People's National Bank of Hagerstown ; that Gross then, at Carnell's request, prepared the check on the People's National Bank of Hagerstown on a blank handed him by Carnell, the amount of the check being $7.00. Carnell then signed the check and presented it to Jacob Gross for Gross Brothers in payment for suit of clothes aforesaid, which were then delivered by Gross to Carnell upon the representation aforesaid, which representation was false and known by the said Carnell to be false when it was made, inasmuch as Mr. A. B. Barnhardt was not then and is not now the president of said bank, and the traverser, Carnell, had no money in said People's National Bank of Hagerstown at that time, nor at any other time before nor since, and has never had an account in said bank."

The cause was argued before McSHERRY, C. J. BRYAN, FOWLER, PAGE and BOYD, JJ.

*A. A. Doub* and *A. A. Wilson*, for the appellant.

*Harry M. Clabaugh, Attorney-General*, for the appellee.

FOWLER, J., delivered the opinion of the Court.

The traverser, who is the appellant, was indicted in the Circuit Court for Allegany County, for obtaining goods under false pretenses. He demurred to the indictment, and his demurrer having been overruled and the State having

abandoned the second count, he pleaded the general issue, and was tried on the first count before a jury and convicted. He was duly sentenced to two years confinement in the penitentiary. From this judgment the traverser has appealed.

During the trial four exceptions were taken by the traverser to the exclusion and one to the admission of testimony, but the first, second and third having been abandoned, only the demurrer and the fourth and fifth exceptions remain to be considered. We have been unable to discover any ground upon which the demurrer could have been sustained. The indictment is in the usual form, and when taken in connection with the bill of particulars, which was demanded by the traverser and filed by the State, it would seem that the charge which the traverser was called upon to answer, as well as the false pretenses by which it was alleged the goods were obtained, are fully and clearly set out. Nor do we think that the indictment is defective in failing to allege the ownership of the goods. It alleges that they were "the goods and chattels of the said Abram P. Gross, Jacob Gross and Solomon Gross, partners, trading under the firm name of Gross Brothers." In the face of the express averment that the goods were delivered to the traverser upon the false representations therein set forth, there is nothing on which to base the contention that neither the indictment nor the bill of particulars alleges that the prosecutors were induced to part with their property by relying upon the truth of such statements. The averment that they parted with their goods *upon* the false statements so made by the traverser, is equivalent to saying that the goods were parted with in consequence of and relying upon such false statements.

*Fourth Exception.*—The witness, Crawford, was called by the defence to prove that he lived in Burlington, W. Va., the home of the traverser, and that he knew him and his father well. He was then asked whether the traverser owned any real estate at the place just mentioned, and if so, what was its value. The Court refused to permit this question

to be answered, and this refusal constitutes the fourth exception.

The evidence sought to be adduced would seem to be altogether immaterial. Whether the traverser said at the time he obtained the goods that he owned a farm or whether in fact he did so own a farm of a certain value, can in our opinion have no probative force whatever in establishing his innocence of the matters charged in the indictment. He is not charged with having made any such false statement, and even if he made it, it is not one of the statements upon which it is alleged the goods were delivered to him.

*Fifth Exception.*—The traverser having testified in his own behalf, that at the time he obtained the goods in question he had been using opium and drinking beer and whiskey, and having denied that he said as alleged that he had money on deposit in the People's National Bank of Hagerstown, he was handed over to the State for cross-examination. Being on cross-examination, the State offered the following letter which was found in the possession of the traverser, and admitted by him to be in his handwriting :

"HAYFIELD, VA., Feb. 22nd, 1896.
" MR. A. B. BARNHARDT,
          " *President People's Bank, Hagerstown, Md.*

" DEAR SIR : Please certify to the fact that I have $100 on int. at 4 per cent. in your bank, and oblige me. I want — use the money, and by giving a check dated July 2nd, 1896, with a shave, I can get the money when I satisfy the parties it is right. Please reply below and return in enclosed stamped envelope by return mail.

          " Yours truly,          " J. P. CARNELL."

The State then offered the following :

          "HAGERSTOWN, MD., 2–27, '96.
" *To whom it may concern :*

" The above is all right. The money is here, payable July 2nd, 1896.          " A. B. BARNHARDT,
          " *President and Cashier People's National Bank.*"

Which was proved to be in a different handwriting and written below the above letter on the same sheet of paper, with a lighter ink than the above letter.

The witness, Barnhardt, was called, and he testified that he was then and had been for three years past the cashier of said bank; that he had not received the letter above referred to, addressed to him, and had not written what followed said letter signed with his name, and that there was no other Barnhardt connected with that bank for the past three years. He had already testified that never at any time had any money been deposited in said bank to the credit of the traverser.

It appears that it was subsequent to the admission in evidence of this letter and the certificate which followed it, purporting to be signed by Barnhardt, and the refusal of the traverser to explain them that the defence for the first time objected to their admissibility, and there is good ground, therefore, for the contention of the State that the objection came too late. The objection was overruled and both the letter and the certificate below it were admitted.

Waiving the question as to whether the objection was reasonably made, should the papers objected to have been admitted? In the notes to section 53, 1 *Greenleaf's Evidence*, the learned author states the general rule to be that while evidence of a distinct crime unconnected with the indictment cannot ordinarily be given in evidence against a prisoner, yet where " the felonious intent is a material part of the crime evidence is admissible of similar acts of the prisoner at different times, if such acts tend to prove the existence of such guilty knowledge or felonious intent." Now, what is this letter but a false statement made in writing by the traverser of similar import to that with which he is here charged with having made, namely, that he had money on deposit in a certain bank in Hagerstown. The representation made in the letter being, according to its purport, subsequent in date to a similar statement set forth in the bill of particulars, may not prove that the latter was in

fact made, yet the letter was admissible for the purpose of showing guilty knowledge. The fact that he had on his person a paper in his own handwriting which contained the same false statement he was charged with in the indictment, tends to prove guilty knowledge as to both.

But in addition to this, the letter was admissible under the exception to the general rule, which is well recognized, namely, for the purpose of showing that the traverser had devised a scheme to obtain goods wherever and from whomsoever he could, by falsely representing that he had money on deposit in the People's Bank of Hagerstown. The important part of the paper, that which was below the letter and purported to be signed by the president and cashier of the bank, certifying that the traverser had money there on deposit was addressed " To all whom it may concern," showing that if he had not actually imposed upon others in the same way he had imposed upon the prosecutors, he was at least fully prepared to do so. *Jordon* v. *Osgood*, 109 Mass. 457 ; *Meyer* v. *People*, 80 N. Y. 364 ; *Lamb's case*, 66 Md. 285 ; *Blake* v. *Albion Ins. Co.*, L. R. 4 C. P. Div. 94. In the case last cited, which was a civil suit to recover money obtained by fraud and false representations, testimony was offered and admitted of former transactions between others and the party defendant to show guilty knowledge on the part of the latter. LORD CHIEF JUSTICE COLERIDGE said : " And in any but an English Court, and to the mind of any but an English lawyer the controversy, whether the evidence is or is not evidence which a Court of justice should receive, would seem supremely ridiculous, because every one would say that the evidence was most cogent and material."

Finding no error in the rulings complained of, the judgment will be affirmed.

*Judgment affirmed and cause remanded.*

(Decided January 6th, 1897).