(No. 15282.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELMER O. MUTCHLER, Plaintiff in Error.

*Opinion filed June 20, 1923—Rehearing denied October 4, 1923.*

1. CRIMINAL LAW—*what constitutes the confidence game.* The offense of the confidence game consists in obtaining money or property by means of some trick, device or swindling operation in which advantage is taken of the confidence which the victim reposes in the swindler, and the fact that the offense assumes the form of a business transaction does not relieve one who by winning confidence fraudulently obtains money or property for his own use.

2. SAME—*when cashing fraudulent check through assistance of innocent party constitutes confidence game.* A party who fraudulently obtains a check for more than the account upon which it is drawn, by assuring the maker that he will not cash it, is guilty of the confidence game when he induces a bank to cash the check through the assistance of an innocent party in whom the bank has confidence and on whose representations it relies, as a party may commit the crime of the confidence game by using an innocent third party to gain the confidence of his victim.

3. SAME—*when evidence of similar transactions is admissible in prosecution for confidence game.* In a prosecution for practicing the confidence game, evidence of similar transactions is admissible to prove guilty knowledge and intent.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MICHAEL L. McKINLEY, Judge, presiding.

W. W. O'BRIEN, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, CLYDE C. FISHER, THOMAS F. REILLY, and JOHN SBARBARO, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

The plaintiff in error was convicted in the criminal court of Cook county under an indictment charging confidence game. He brings the cause here for review.

The charge is based on the cashing of a check for the sum of $1200 drawn on the Central Trust Company of Illinois, payable to plaintiff in error and signed by D. C. Campbell, and on the representations made in connection therewith. The check was cashed by the Mutual National Bank of Chicago after indorsement by Thomas D. Gately. Payment on the check was refused by the Central Trust Company on the ground of insufficient funds on deposit in the checking account of the drawer, D. C. Campbell.

The People's evidence tells the following story of the operations of plaintiff ·in error: He met Campbell, maker of the check, about the middle of March, 1922. Campbell was a law student without means and was seeking employment in connection with his studies. He saw an advertisement of plaintiff in error for an office manager and secretary and called upon him at his apartments. At this time Campbell stated his qualifications, and was told by plaintiff in error that the job referred to would be with an amusement organization, and that if he qualified as such office manager and secretary he would receive as compensation for his services ten per cent of the receipts, and that a drawing account of $45 per week would be opened for his benefit. Plaintiff in error stated to Campbell that he, plaintiff in error, was a real estate promoter and had lands at Bay City, Michigan, and other real estate around Lake Winona, Indiana, and that he also had other interests. He

showed to Campbell what purported to be a permit from the Secretary of State of Indiana to form a certain corporation in which the plaintiff in error was the owner of 267 shares of stock of the estimated value of $26,000, and other papers calculated to give Campbell the idea that he was a man of affairs. He told Campbell that to qualify for the position of manager and secretary he would be required to give plaintiff in error a cash bond in the sum of $500. Campbell protested and asked if a bonding company would not do as well, but was informed that plaintiff in error wanted a cash bond. Campbell attempted to give a cash bond, but failed in his efforts to secure the money and reported to plaintiff in error that he was unable to secure such a bond. Campbell later met plaintiff in error at the Hotel LaSalle, where, in the presence of Frank E. Schneider and Walter Dorman, Campbell was asked concerning his financial condition. He replied that he had between $7 and $11 in the bank of the Central Trust Company. The plaintiff in error stated that he would guarantee Campbell the necessary finances to get the job and would advance to him the sum of $1000 or $1500; that Campbell was to draw a check and deliver it to the plaintiff in error because of funds he would have in his hands; that plaintiff in error would not use the check but would keep it safely in a deposit box. Campbell, after stating to plaintiff in error approximately the amount of money he had on deposit with the Central Trust Company, as herein stated, executed the check in question and delivered it to plaintiff in error. After the delivery of this check Campbell did not see plaintiff in error again until after his arrest. On the following Monday plaintiff in error called Campbell on the telephone and told him that he would be in Winona Lake on that day and would be back on the Wednesday following, and asked him to meet him then and he would then let him know when to go to work.

Thomas D. Gately, whose name appears on the back of the check as T. D. Gately, had met the plaintiff in error some six weeks prior to the cashing of the check. He desired employment, and seeing the advertisement of plaintiff in error he called upon him, and was told by him that he (plaintiff in error) had a land deal at Winona Lake and that he would employ Gately as sales manager there, to handle the general business deals of the plaintiff in error. After several conferences plaintiff in error told Gately that in order to secure that position he would have to give a cash bond for three months, as he did not want a bond executed by a bonding house. Gately gave plaintiff in error $100 in cash in lieu of a bond. He reported to plaintiff in error for work two or three times and each time was told to "hang around here; I am not quite ready yet; hang on until I am ready." Gately, however, was never put to work and was paid no salary. Some days after this plaintiff in error said to Gately, "You have some commissions coming; I have sold out to an attorney in the loop." He did not, however, give the name of the attorney. He requested Gately to take him to the bank where Gately had his deposit, for the purpose of being introduced, so that he might cash a check, saying, "My bank is closed and I want to close the deal with some doctor in the Majestic building who is going to Europe." Gately took the plaintiff in error to the Mutual National Bank, where Gately kept his account and where his credit and standing were good. Upon arriving at the bank Gately introduced the plaintiff in error to Nelson, the chief clerk of the bank, and told Nelson of his business dealings with the plaintiff in error, and that the plaintiff in error desired to cash a check and that he was positive the check was good. While Gately was talking to Nelson the plaintiff in error wrote the name of Gately across the back of the check and stated, "I am making this check payable to your order." Gately gave the check to the paying teller and received twelve $100 bills, which, as he tes-

tified, he handed to the plaintiff in error in the presence of Nelson. The name of Frank E. Schneider was also indorsed on the back of the check, and while at the bank Gately asked the plaintiff in error about Schneider and was told that Schneider was the landlord of plaintiff in error.

Evidence of negotiations with Schneider concerning employment was admitted by the court at the trial of the case over the plaintiff in error's objection. The evidence of this transaction is that Schneider met plaintiff in error about the time the latter was carrying on negotiations with Campbell and Gately. Plaintiff in error made a proposition to Schneider to employ him as his secretary in a land deal. Schneider, to secure the position as such secretary, was to give a $500 cash bond to indemnify the plaintiff in error against any ill-doing on the part of Schneider while in such employment. Schneider was unable to raise the $500 in cash and was then told by the plaintiff in error to "stick around;" that the plaintiff in error would make him bookkeeper. Schneider later met Gately and Campbell at the Hotel LaSalle and was present when the check in question was executed and delivered. The plaintiff in error showed Schneider the check and told him that he received it from Campbell and that he was going to employ Campbell as secretary. After this meeting, and prior to the time the check was cashed by the Mutual National Bank, plaintiff in error induced Schneider to attempt to cash this check at the Continental National Bank. This bank refused to do so on account of the amount involved. Thereafter plaintiff in error induced Schneider to present the check at the bank on which it was drawn. Payment was refused for the reason that there were not sufficient funds in Campbell's account to meet it. This occurred some days before the cashing of the check. The evidence disclosed that plaintiff in error had no such business interests as he had represented.

Plaintiff in error testified in his own behalf and denied that Campbell told him of the small amount on deposit to

his credit in the Central Trust Company, and testified that
Campbell represented to him that he could get $1200 or
$1500 at any time. He also denied Gately's story concern-
ing the manner in which the money was obtained from the
Mutual National Bank, and denied that he ever received
any of the money paid to Gately on the check.

Plaintiff in error seeks reversal of the judgment upon
two grounds: First, that the record does not show that any
confidence was reposed by the bank in plaintiff in error, and
therefore the crime of confidence game was not proved; and
second, incompetent evidence was allowed to go to the jury.

As to the first contention, counsel for plaintiff in error
argue that the bank paid the check because of confidence in
Gately and not in plaintiff in error; that it was paid because
Gately said he was positive the check was all right. The
offense of confidence game consists in obtaining money or
property by means of some trick, device or swindling oper-
ation in which advantage is taken of the confidence which
the victim reposes in the swindler. (*People* v. *Ullrich,* 299
Ill. 250.) The fact that the offense assumes the form of a
business transaction does not relieve one who inspires con-
fidence and fraudulently obtains money or property for his
own use. (*People* v. *Robinson,* 299 Ill. 617.) The state-
ment of Gately to the bank was that the plaintiff in error
wished to have a check cashed and that he (Gately) was
positive the check was all right. There was no statement
to the effect that the check was to be cashed for Gately.
Gately told the chief clerk of the bank the story of his
relations with plaintiff in error, and it is evident that the
bank paid the check because its chief clerk believed the
story which Gately told him concerning plaintiff in error
and Gately's transactions with him. Plaintiff in error was
the only man present who knew that the check was not
good. His attempt to cash the same through Gately's rep-
resentations, and his presence and silence when Gately told
the story to Nelson and requested that the check be cashed

for plaintiff in error, amounted to a representation on the latter's part that the check was good. As a result of his presence and silence, as well as the story told by Gately, which Gately believed to be true, the bank paid the check believing it to be a good. check. It is clear that the bank understood it was being paid to plaintiff in error. The latter knew not only that the check was not good but that he was using Gately as an innocent means of perpetrating a fraud on the bank. Had Gately known the check was not good he also would have been an accomplice in a crime of which both he and plaintiff in error would have been guilty. Plaintiff in error is no less guilty because he used an innocent party to gain the confidence of his victim and thereby carried out his swindling scheme. On the contrary, his crime is all the more culpable. The record sustains the charge that the money was secured from the bank by reason of the confidence it had in the representations made by plaintiff in error, though the same were made through an innocent third party.

While no case identical with the facts in this case has been previously before this court, cases of like character have been passed upon by the courts of other States. In *State* v. *Bailey,* 63 W. Va. 688, where the defendant used an innocent third party for the purpose of perpetrating the crime charged, that court says: "The law does not justify or excuse an act which makes. the intentional perpetrator thereof guilty of a felony by denying or withholding remedy for the vindication of the peace and dignity of the State, by reason of the peculiar circumstances under which or the means by which it was accomplished. If the party who actually did the act was innocent of intentional wrong and the act on his part was by procurement of another, it imputes the criminal intent to that other and makes him the guilty party although he was not in any sense an accomplice, co-conspirator or aider and abettor of the actor. The relation of the parties to one another and to the act is such as

to create an exception to the general rules of law respecting principals and accessories." In *Regina* v. *Clifford,* 2 C. & K. 202, the accused procured the commission of a forgery through an agent and was held to be guilty. In *Regina* v. *Bleasdel,* 2 C. & K. 765, conviction of a charge of theft of coal was sustained though the record showed the theft was committed through innocent agents. In *Gregory* v. *State,* 26 Ohio St. 510, the accused procured the commission of a forgery through an innocent third party, and his conviction of the crime of forgery was sustained. In *Commonwealth* v. *Hill,* 11 Mass. 136, the defendant was convicted of passing a counterfeit check. The record showed that he gave the check to a boy, telling him that he would give him half of it if he would have it cashed. The boy was innocent of any criminal intent and had no knowledge of such intent on the part of the accused. He took the check to a tailor and purchased a vest for three dollars and received three dollars in money, which he returned to the accused. Conviction in that case was sustained on the ground that where one uses an innocent agent to commit a crime he is guilty though not himself actually perpetrating it. Other authorities sustaining this view are *Commonwealth* v. *Gray,* 150 Mass. 329; *Commonwealth* v. *Eggleston,* 128 id. 408; *State* v. *Basserman,* 54 Conn. 88; 1 McClain's Crim. Law, sec. 187; Brill's Cyc. of Crim. Law, sec. 270.

It is also urged that the check was not a bogus check, and for that reason the conviction cannot be sustained. The check was regularly signed by the maker, but the record shows that when executed plaintiff in error was told that it was not good because the maker had but a few dollars in the bank. He also knew that payment on it had been refused by the bank on which it was drawn, when it was presented by Schneider at plaintiff in error's request. It may also be noted that the plaintiff in error was not convicted for obtaining money by means of a false or bogus

check but by means of a confidence game.   The record abundantly sustains the conviction.

It is urged by the plaintiff in error that the court erred in admitting evidence relative to the transactions of the plaintiff in error with Schneider and Gately because those transactions were independent of the one charged in the indictment.   In a prosecution for practicing the confidence game, evidence of similar transactions is admissible to prove guilty knowledge and guilty intent.   *DuBois* v. *People,* 200 Ill. 157; *People* v. *Weil,* 244 id. 176; *People* v. *Shaw,* 300 id. 451; *People* v. *Crawford,* 278 id. 134.

The judgment of the criminal court of Cook county will be affirmed.                    *Judgment affirmed.*