EDGAR B. SIMMONS *v.* STATE OF MARYLAND.
[No. 23, April Term, 1933.]

*Decided June 21st, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William L. Rawls* and *Thomas W. Simmons,* with whom was *A. Stengle Marine* on the brief, for the appellant.

*James A. McAllister, State's Attorney,* and *V. Calvin Trice, Special Assistant to the State's Attorney,* with whom were *Wm. Preston Lane, Jr., Attorney General,* and *Willis R. Jones, Deputy Attorney General,* on the brief, for the State.

PARKE, J., delivered the opinion of the Court.

Edgar B. Simmons was indicted on eighteen counts. The indictment charged him with larceny of money from the Citizens' Bank of Hurlock, Maryland, under the counts with odd numbers, and with obtaining money from the bank by

false pretenses under the counts with the even numbers. Every one of the counts in larceny is followed by a count charging the obtaining of a similar sum of money from the same owner by false pretenses.

The identity of the victim and of the amount and the relative correspondence in time of the crimes charged, and their presentment in separate counts, but in the alternative and sequential forms of larceny and false pretense, disclose that the offenses alleged in the several counts were associated or cognate crimes.

Before pleading the traverser demanded a bill of particulars. The one furnished was amended (*Jules v. State*, 85 Md. 305, 36 A. 1027), and the first question raised is the sufficiency of the final particulars furnished by the State. The bill of particulars did not apply to the counts in the indictment which charged larceny, but did furnish the particulars of the offense charged in every one of the counts for the crime of false pretenses. There was no occasion for a bill of particulars of the larcenies. The day and year, the sum of the current money taken, and its value, and the name of its owner, and the felonious taking from its possession by the traverser, were distinctly and clearly alleged in the approved form in every one of the counts charging a larceny. Code, art. 27, sec. 559; *State v. King*, 95 Md. 128, 51 A. 1102; *State v. Barrett*, 148 Md. 155, 128 A. 744; *Wedge v. State*, 12 Md. 232.

With respect to the even-numbered counts of the indictment, a different problem arises, because the State had there availed herself of the statutory provision that the indictment need not state the particular false pretenses intended to be relied on in the proof. When this is done, the right of the traverser to a definite statement of the false pretense of which he is accused is assured by the statutory requirement that, upon his application to the state's attorney before the trial, the traverser shall be entitled to the names of the witnesses and a statement of the false pretenses intended to be given in evidence. Code, art. 27, sec. 555. The traverser at bar made this demand, and the State complied, but

the sufficiency of the bill of particulars is raised. The State furnished the names of the witnesses, whose listing, however, did not restrict the State to their number nor control or affect the competency of witnesses, and, in its discretion, the trial court may allow the State to produce other witnesses than those whose names are so furnished. *Cairnes v. Pelton,* 103 Md. 44, 63 A. 105; *Schaumloeffel v. State,* 102 Md. 473, 62 A. 803. So, the objection to the particulars furnished could not be entertained on the ground that the State had failed to furnish the names of the witnesses for the prosecution; and the reasons assigned were that the particulars were legally insufficient; and that they were a variance from the facts alleged in the false pretenses charged in the counts of the indictment, and inadmissible if offered in evidence.

There can be no question raised of the form and completeness of the particulars, and, so, the exception is one of substance, and goes to the admissibility of the facts stated to establish the crime of false pretenses. It, therefore, becomes necessary to consider the crime of "false pretenses," which, for our present purpose, is defined by statute to be when any person shall by any false pretense obtain from any other person any chattel, money, or valuable security, with intent to defraud any person of the same, although an intent to defraud any particular person is not necessary provided it be proved that the traverser did the wrongful act with the intent to defraud, but a mere promise for future payment, although not intended to be performed, is not sufficient to constitute the false pretense. Code, art. 27, secs. 139, 558; *Hawthorn v. State,* 56 Md. 535; *Hochheimer's Criminal Law* (2nd Ed.), sec. 319.

The bill of particulars was addressed to a number of counts, whose similarity and that of the related sections of the bill of particulars will make a separate consideration unnecessary. It is shown by the bill of particulars that, throughout the entire period of the commission of the crimes charged, the traverser was the president of the bank which

162

was the victim of the false pretenses set forth in the several counts of the indictment; and that he was, also, the president of the Franklin Credit & Finance Corporation, against whose deposit account in the bank the several sums of money alleged to have been unlawfully obtained by the traverser were ultimately attempted to be charged. The false pretenses stated in the bill of particulars were that, on the various occasions when he procured money from the bank, the traverser's deposit account was overdrawn, and that he so obtained the specified sums of money by, previously, falsely and fraudulently representing to the bank (1) that he had been granted the authority and power to execute and issue a certain charge ticket or paper writing of the Franklin Credit & Finance Corporation for the sum of $2,000, drawn upon the bank and payable by it to the traverser; and (2) that the Franklin Credit & Finance Corporation had previously conferred upon the traverser the power and authority to have charged to the corporation's account of deposit with the bank specific checks, which were drawn on the bank by the traverser at divers times when he had no sufficient deposit or funds, and payable to various parties for sundry sums, and that the said bank, by reason of such false and fraudulent representations, had so paid these checks for the benefit and upon the request of the traverser and to the persons specified by his order in writing.

The substance of the offense was the obtaining of the money and, with a fraudulent intent, depriving the lawful owner of its title and possession. While in both classes of the false pretenses set out in the bill of particulars, the money did not manually pass from the possession of the bank to the actual possession of the traverser, the money of the bank was so situated that the bank could and did make a complete transfer of the money to the traverser without actual delivery to him; and such transfer was effected by the bank paying out its money on the order of the traverser to his nominees by reason of the prior false and fraudulent pretense or representation by the traverser to the bank that the money

of the bank, induced to be paid out for the benefit of the traverser, had been agreed by the Franklin Credit & Finance Corporation should, by the direction of the traverser, be charged against the deposit account with the bank of the Franklin Credit & Finance Corporation.

The bank was made the innocent agent of the traverser to pay to the parties indicated for the traverser's use and benefit the several sums of money agreed to be paid by the bank, for the traverser. The passage of the title, possession and control of the money from the bank to the indicated third parties at the traverser's request, or in accordance with his written order, was an obtaining of the money by the traverser as fully and completely as if the physical delivery had been made to the traverser in person. *Schaumloeffel v. State,* 102 Md. 470, 473-475, 62 A. 803; *Brill's Cyclopedia of Criminal Law,* vol. 2, sec. 1261; 25 C. J., p. 606, sec. 34; *Comm. v. Langley,* 169 Mass. 89, 47 N. E. 511; *Comm. v. Harley,* 7 Metc. (Mass.), 462; *Comm. v. Wood,* 142 Mass. 459, 8 N. E. 432; *In re Dunfee,* 219 N. Y. 188, 114 N. E. 52; *Foster v. State,* 16 Ala. App. 458, 78 So. 721; *Clark v. State,* 14 Ala. App. 633, 72 So. 291; *Sandy v. State,* 60 Ala. 58; *State v. Balliet,* 63 Kan. 707, 66 P. 1005; *State v. Mendenhall,* 24 Wash. 12, 63 P. 1100; *Rand v. Comm.,* 176 Ky. 343, 195 S. W. 802, 806; *Comm. v. Coe,* 115 Mass. 481; *People v. Woods,* 59 Cal. App. 740, 212 P. 41; *People v. Mutchler,* 309 Ill. 207, 140 N. E. 820; *Russell on Crimes* (8th Ed.), vol. 2, pp. 1477, 1478, note q.

From these considerations and on the authorities cited, the false pretense or fraudulent representation set forth in the bill of particulars with reference to every one of the counts in false pretenses was a false and fraudulent representation of a material and existing fact by the traverser, who knew the fact represented not to be true, but adapted to induce the bank to part with its money in the specified amount. The objections urged by the traverser are, therefore, without foundation, and the rulings of the lower court on the motion of *ne recipiatur* and on the exceptions to the amended bill of

particulars must be sustained. The motion of *ne recipiatur* was filed two days after the filing of the amended particulars and was, therefore, too late; but the court has considered it here as though it were a motion filed to strike the bill of particulars from the record on the same grounds which would have been presented by a timely motion of *ne recipiatur*. *Horner v. Plumley,* 97 Md. 279, 54 A. 971.

The traverser filed a motion to quash the indictment, which was overruled, and an exception noted. He then demurred to the indictment, and this demurrer was not sustained. The grounds upon which the motion to quash the indictment and the demurrer are based are so similar that they do not require separate discussion. No argument has been addressed to the court to the effect that the counts sounding in larceny are bad; and an examination discloses that they contain all the essential averments in an accepted, adequate and certain form. *Hochheimer's Criminal Law* (2nd Ed.), secs. 374, 375.

The counts charging the crimes of false pretenses are specifically attacked for the alleged reasons that they neither charge the commission of a crime, nor state the necessary averments to constitute the crime, with the requisite certainty and definiteness of good pleading. The several counts directly charge the traverser with the acts constituting the offense of false pretenses and state the ownership of the moneys obtained, the person defrauded by the representation, the place where and the time when the crimes were committed, and by proper averments leave no essential element to be supplied by intendment, argument or implication. *Schaumloeffel v. State,* 102 Md. 470, 62 A. 803; *State v. Blizzard,* 70 Md. 385, 17 A. 270; *State v. Edwards,* 124 Md. 592, 92 A. 1037; *Armacost v. State,* 133 Md. 292, 105 A. 147.

The traverser was, therefore, apprized of the accusation against him by the precise and certain allegation of every fact necessary to be proved in order to convict him of the crime charged. The statute relieves the State of the necessity of

setting out in the indictment with particularity the false pretenses intended to be relied upon by the State, but provides that these, with the names of the witnesses, shall, on application, be furnished the traverser by the State. *Schaumloeffel v. State,* 102 Md. 470, 62 A. 803; *Jules v. State,* 85 Md. 305, 36 A. 1027; *Carnell v. State,* 85 Md. 1, 36 A. 117; *State v. Blizzard,* 70 Md. 385, 17 A. 270; Code, art 27, secs. 555, 558, 559.

None of the eighteen counts of the indictment charges more than a single offense, and it is not bad for duplicity. *Hochheimer's Criminal Law* (2nd Ed.), sec. 96; *Wharton on Criminal Prac. & Proc.* (10th Ed.), sec. 652.

When the several counts in the indictment are taken separately, they are every one found to be good on demurrer; and the remaining vice urged is presented by the contention that the indictment is bad as an entirety because of a misjoinder of counts. Since each count must embody a distinct and complete accusation of a single crime, the general rule that permits the joinder of several counts in an indictment is a recognition of the doctrine that distinct offenses may be charged in an indictment. So, the prevailing practice is that not only counts for misdemeanors may be joined, but, also, counts for several felonies, and, likewise, counts for felony and misdemeanor, subject to the qualification that, generally, the different counts present different aspects of the evidence of the same offense or, if not of the same offense, the offenses charged are of the same general nature and permit the same mode of trial. The matter of a misjoinder is generally left to the discretion of the trial court, and the courts will guard against injustice and abuse whenever apparent, and not permit such a joinder of counts as will embarrass the traverser in his defense by, in the court's sound discretion, quashing the indictment, permitting a *nolle prosequi* as to a count or counts, or compelling the prosecution to elect on which count or counts to proceed. *Wharton on Crim. Prac. & Proc.* (10th Ed.), secs. 335, 338-342, 651, 887; *Hochheimer's Crim. Law* (2nd Ed.), sec. 106; 1 *Chitty, Crim. Law,* 249,

166

250; *Pointer v. United States,* 151 U. S. 396, 14 S. Ct. 410, 38 L. Ed. 208; *Hawker v. People,* 75 N. Y. 487.

The offenses of larceny and of obtaining money or other property by false pretenses are closely allied, and difficulty is often experienced, because of their analogy, in ascertaining which of the two crimes has been committed. The distinguishing difference is that in larceny the owner has no intention to part with his title and possession to the person taking the property, while in false pretenses he does intend to part with his title and possession, but it is obtained from him by fraud. 2 *Wharton's Crim. Law* (12th Ed.), secs. 1207, 1208.

Mr. Bishop's conception of the distinction is thus stated: "It is in short that when only possession and not title had passed the taking is larceny otherwise it is obtaining by false pretenses." 2 *Bishop on Criminal Law* (9th Ed.), sec. 414 (4). The practical difficulties, in the course of the administration of this branch of the criminal law that is concerned with the fine and technical distinctions frequently arising in the determination of whether the crime committed is larceny or false pretenses, are reflected in section 139 of article 27 of the Code, which, after defining the crime of false pretenses and prescribing its punishment, provides that if, upon the trial of any person indicted for such misdemeanor, it shall be proved that he obtained the property in question in any such manner as to amount in law to larceny or robbery, he shall not by reason thereof be entitled to be acquitted of such misdemeanor, and no person tried upon such misdemeanor shall be afterwards liable to be prosecuted for larceny or robbery upon the same facts.

There is no inherent incongruity or repugnancy in the joinder of the offenses of larceny and false pretenses. In the present instance the wrongful conduct of the accused was alternately charged, first, as a felony and, then, as obtaining money by false pretenses. The course of the trial is the same in the two grades of offense, and, if there had been any hardship or injustice wrought the defendant by the joinder, the trial court had the power, in its sound judicial discretion, to

correct the adverse situation. As was said in *State v. Sut-
ton*, 4 Gill, 494, 498, it "is settled by the case of *Burk v.
State*, 2 H. & J. 426, and, therefore, no argument on our
part is necessary to maintain the decision of the county court,
that a felony and misdemeanor may be joined in the same
indictment." *Manly v. State*, 7 Md. 135, 148, 149; *Wheeler
v. State*, 42 Md. 566; *State v. McNally*, 55 Md. 563; *Stevens
v. State*, 66 Md. 203, 7 A. 254; *State v. Bell*, 27 Md. 675,
92 Am. Dec. 658; *State v. Blakeney*, 96 Md. 711, 54 A. 614.
Wharton expressly states that obtaining money by false pre-
tenses and larceny from the person may be joined in dif-
ferent counts in the same indictment. *Wharton on Crim.
Prac. & Proc.* (10th Ed.), secs. 651, 887; *Pointer v. United
States*, 151 U. S. 396, 400, 404, 14 S. Ct. 410, 38 L. Ed.
208. The precedents and usage in this state support the
joinder of the offenses, and leave to the sound discretion of
the trial court, by the familiar methods at its command, the
protection of the accused against being confounded or em-
barrassed in his defense, or the jury distracted. *State v.
Edwards*, 124 Md. 592, 92 A. 1037; *Freud v. State*, 129
Md. 636, 639, 640, 99 A. 934; *Delcher v. State*, 161 Md.
475, 158 A. 37; *State v. Lassotovitch*, 162 Md. 147, 156,
157, 159 A. 362; *Lanasa v. State*, 109 Md. 602, 612, 613,
71 A. 1058, and *supra*.

After the ruling on the demurrer, the traverser interposed
a plea of limitations to the nine counts which presented him
for obtaining money by false pretenses. The court ruled this
plea bad, as the crime so charged, although a misdemeanor,
was punishable, at the discretion of the court, by fine and
imprisonment, or by confinement in the penitentiary for not
less than two years nor more than ten years, as the court
shall award. Code, art. 27, sec. 139. As decided in *Schaum-
loeffel v. State*, 102 Md. 472, 62 A. 803, the provision of the
statute of limitations, found in Code, art. 57, sec. 11, that
no prosecution for any misdemeanor shall be commenced un-
less within one year from the time of the offense committed,
except those punished by confinement in the penitentiary,
does not apply to the crime of false pretenses, because it is

the liability to punishment in the penitentiary, and not the punishment actually inflicted, which controls the inclusion of the crime of false pretenses within the exception.

On a plea of not guilty the traverser was then tried by jury, which rendered a verdict of not guilty of larceny, but guilty of false pretense on all counts of the indictment. The verdict was followed by a motion for a new trial, which the court overruled in the exercise of its discretion (*McCurdy v. State,* 151 Md. 438, 440, 135 A. 161), and this was followed by a motion in arrest of judgment. The grounds urged were: (1) Those assigned on the objections to the amended bill of particulars; and (2) the demurrer to the indictment and to the plea of limitations; (3) the errors alleged to have been made by the court in its rulings on the evidence; and, finally, (4) the legal insufficiency of the evidence to support the verdict of guilty on the false pretense counts of the indictment.

There was no error in the refusal of the lower court to arrest the judgment on this motion. A judgment can be arrested only for substantial errors intrinsic in the pleadings or in the verdict, apparent on the face of the record, and brought up for review by the motion. Consequently, neither the rulings on the evidence as offered in detail nor as presented in its entirety, and so considered with reference to its legal sufficiency to support a verdict of guilty of the crime of false pretenses, can be considered. 2 *Poe, Pl. & Pr.* 750; *Byers v. State,* 63 Md. 207, 209, 210. In addition, it may be said that, under the Constitution of Maryland, the jury is the sole judge of the law and the facts, and this court has repeatedly declined to usurp this function, either by passing upon question of the legal sufficiency of all the testimony to establish the crime of which the accused is charged, or by permitting the court at *nisi prius* thus indirectly, but decisively, to invade an exclusive constitutional prerogative of the jury. *Infra.*

The scope of a motion in arrest of judgment has been narrowed by the terms of section 533 (553) of article 27 of the Code, which provides: "No indictment or presentment

for felony or misdemeanor shall be quashed, nor shall any judgment upon any indictment for any felony or misdemeanor, or upon any presentment, whether after verdict, by confession or otherwise, be stayed or reversed * * * by reason of any mere defect or imperfection in matters of form which shall not tend to the prejudice of the defendant nor for any matter or cause which might have been a subject of demurrer to the indictment, inquisition or presentment." This enactment prevents the questions raised on the demurrers to the indictment and plea of limitations from being considered on the motion. *McCurdy v. State,* 151 Md. 438, 441, 135 A. 161.

All the grounds thus appear to be improperly assigned, except the one relating to the bill of particulars, and that ground has already been considered and the bill of particulars held to be in form and sufficient. No other reasons were specifically set out in the motion, but a question has been made on the form of the verdict, which may be considered under the general assignment of other reasons to be stated at the hearing on the motion, since whatever error there may be would appear from the form of the verdict of record.

The eighteen counts of the indictment charged alternately the crimes of larceny and false pretenses. The verdict was responsive to the issues submitted to the jury, and was in the form: Not guilty of larceny, but guilty of false pretenses on all counts of the indictment, with recommendation of mercy by the court. It is clear that the jury intended to acquit of the crime charged in every one of the counts in larceny, and to convict of the crime charged in every one of the counts in false pretenses. Where the meaning of the verdict is so unmistakable, mere inartificiality in its form will not be sufficient to defeat justice by a nullification of a verdict which plainly declared the intent of the jury to convict on all the counts charging the crime of false pretenses and to acquit on all the counts charging the crime of larceny. Under these circumstances, it is the duty of the court to enforce the rule

that every intendment is made in support of the finding of the jury, which was responsive, certain and complete, within the comprehension of laymen, and, so, of the court. *Hechter v. State,* 94 Md. 429, 439-443, 50 A. 1041. As said in *Bishop's New Criminal Procedure,* sec. 1005 a (1): "The language of the verdict, being that of 'lay people,' need not follow the strict rules of pleading, or be otherwise technical. Whatever conveys the idea to the common understanding will suffice. And all fair intendment will be made to support it." Therefore, if the counts are numbered, the verdict may be guilty on specified numbers, and not guilty on others; or the acquittal or conviction may be by naming the offense, as if there are counts for larceny and for embezzlement the verdict of "guilty of embezzlement and not guilty of larceny" will be as good as giving the number of the embezzlement count. *Idem.* sec. 1010 (2), (3).

The verdict of the jury in the present case, of guilty on all the counts charging the lower but same grade of crime for which he was indicted, was followed by the imposition of a sentence to an imprisonment for the period of three years, which was well within the competency of the trial court. Code, art. 27, secs. 139, 578. The consolidated sentence was for all the counts of the indictment in false pretenses and was within the minimum and maximum period of two and ten years prescribed, subject, however, to a power to impose a less term than the minimum. *Supra.* So, the consolidated sentence, whether regarded as separately imposed for every count but running concurrently, or as an aggregate of the periods fixed for every separate count, is valid. *Bishop's New Crim. Proc.,* vol. 2, sec. 1327 (2); *Reg. v. Castro,* 5 Q. B. D. 503.

The traverser has abandoned his ninth, twelfth, thirteenth, and twenty-seventh exceptions, and no injury resulted on the rulings on the thirty-third, thirty-fourth, and thirty-fifth exceptions, because the testimony desired was later admitted in a more favorable form. *Gambrill v. State,* 120 Md. 203, 209, 87 A. 900. The remaining exceptions taken to the

rulings on the evidence may be divided into groups. The first group embraces those which relate to the admission in evidence of the nine paper writings, comprising one charge or credit ticket in favor of the defendant and drawn against the deposit account of the Franklin Credit & Finance Corporation on the bank, and eight checks drawn by the defendant on the bank when the defendant had there no sufficient funds on deposit; and the facts associated with the payment by the bank of these demands. These paper writings, together with the time, manner, circumstances, and cause of their payment, were admissible in evidence because they were the instruments which the traverser induced the bank to pay for his benefit and use by reason of the false and fraudulent pretense that the traverser was authorized by the Franklin Credit & Finance Corporation to have them charged by the bank to the account of this corporation. 25 *C. J.* 643, 645.

In this group may also be included the exception to the identification by the secretary of the board of directors of the bank of the by-laws of the bank, and the reading in evidence from the by-laws of the duties of the president of the bank.

In every one of these rulings, the action of the lower court did not go beyond admitting in evidence testimony tending to prove the conditions and circumstances directly connected with the transaction, and material to the establishment of (1) an intent on the part of the traverser to defraud the bank; (2) an actual fraud committed; (3) the false pretense; and (4) the fact that the fraud resulted from employment of the false pretense. These were the elements which constituted the crime charged, and no reversible error is found in the admission of the testimony. See *Delcher v. State,* 161 M. 475, 158 A. 37; *Deibert v. State,* 150 Md. 687, 133 A. 847; *Summons v. State,* 156 Md. 382, 144 A. 497; *Archer v. State,* 145 Md. 128, 125 A. 744; *Underhill on Criminal Evidence* (3rd Ed.), secs. 641, 648.

The second group is formed by three exceptions to the refusal to let a witness answer what was the extent of the examination of banks made by bank commissioner or his as-

sistants; what was the number of bank failures in Maryland and in the United States within a specified time. Obviously, such testimony was neither material nor relevant to any issue, but confusing. *Wharton Crim. Evidence* (10th Ed.), sec. 28.

The third group is composed of three questions which the court declined to permit, whereby the traverser proposed to ask what his financial condition was on or about January, 1930; throughout the period covered by January 20th, and September 24th, 1930; and what his annual and net income were during the years 1929 and 1930. The defendant's gross and net annual income during the year preceding the offenses charged would not generally be relevant. So, the questions, without any disclosure of their materiality, of what was the gross and net income for the year 1929 as well as the year 1930, if unobjectionable upon other grounds, were properly rejected as embracing one yearly period during which none of the alleged crimes occurred. The other interrogatories were addressed to the periods of January, 1930, and of January 20th, 1930, to September 24th, of the same year, when the false pretenses are charged to have been made.

The general rule that the pecuniary condition of the accused is irrelevant is subject to an exception in the case of a crime of false representation. This exception arises because the property of the owner is usually procured because of his confidence in the financial responsibility, capacity, and intention to pay or to perform either of the cheater or of some other person whose credit or capacity is the basis of the pretense, and a lack of either the financial ability or other capacity to perform is evidential on the issue of fraud *vel non* in the false representation and, therefore, the solvency or insolvency, capacity or incapacity, of the accused or of that other person upon whose credit or capacity the property is procured, is relevant to prove that the accused made the false representation either in good or in bad faith. *Underhill's Crim. Evidence* (3rd Ed.), sec. 650; *Commonwealth v. Jeffries,* 7 Allen (Mass.) 548; *Wigmore on Evidence* (2nd Ed.), 392. In *Gambrill v. State,* 120 Md. 203, 87 A.

900, 903, an illustration is found of the application of this principle. In that case, the defendant was the president of a corporation for which he obtained a loan from a third party upon the corporate note, secured by the pledge of certain specific warehouse receipts for a named number of barrels of whiskey of the corporation in bond. The money was here procured because of the lender's confidence in the validity of the pledge. The false pretense was the alleged fraudulent issuing and pledge of warehouse receipts for goods that had already been withdrawn from bond and were hypothecated. There was no denial of the misrepresentation, and, on the defense made, the question was whether or not the misrepresentation was by mistake or by design. The defendant offered testimony to show that the company of which he was the president, and which was the exclusive beneficiary of the transaction, was in a sound financial condition at the time of the loan, and had in storage a quantity of whiskey for which no receipts had been issued, and that the books of the company were not kept by the president but by other agents, and did not readily disclose the condition of outstanding receipts with respect to duplication. It was held that this offer of testimony should not have been rejected. Judge Urner, speaking for the court, said: "In our opinion the defendant's proof was unduly restricted by the rulings now under review. The evidence he desired to offer was distinctly pertinent to the issue of guilt or innocence under the special conditions shown by this record. Since the treasurer of the company, who was interested in its finances, and who contracted the loan involved in this case, was unaware that the receipt he signed and delivered as security contained duplicate numbers, it is conceivable that the president may have been under the same misapprehension, and he was entitled to support his testimony as to his want of guilty knowledge and intent by proof that the surrounding circumstances were consistent with that defense." In other words, it was held that, on an issue of fraudulent intent, the facts that the corporate borrower was not at the time in financial distress, and had warehouse receipts which had not been

transferred or hypothecated, although the identity of those that had been disposed of was not readily ascertainable by the corporate system of accounting, but which were then free and available for transfer or hypothecation, since they were of the same tenor, of equal value as the originals of the duplicated receipts that had been pledged for a loan of which the corporate borrower was the sole beneficiary, were admissible facts because their reasonable and natural consequence, which the law presumes was intended or anticipated by the representator, tended to establish a mistaken, and not a fraudulent, false representation of the genuineness of the pledged warehouse receipts. The facts were not collateral as they related to the pretense, and were not irrelevant since they concerned the intent with which the pretense was made and tended to show the good faith of the accused in making the false representation. The decision, therefore, applied the doctrine that the evidence must be relevant to the specific facts embraced in the representations.

In *Carnell v. State,* 85 Md. 1, 36 A. 117, 118, the enforcement of this principle resulted in the rejection of the testimony offered. In that case the defendant was charged with having obtained a suit of clothes upon the false pretense that the check he gave in payment was drawn against a deposit of a specific sum to his credit in a certain bank of which his uncle was the president. The proof was clear that the representations were false and fraudulent, and the check was bad. In his defense the traverser called a witness who testified that he lived in the same town and knew the accused well. He was then asked whether the traverser owned any real estate at that place, and, if so, what was its value? The court refused to admit this testimony and said: "The evidence sought to be adduced would seem to be altogether immaterial. Whether the traverser said at the time he obtained the goods that he owned a farm, or whether, in fact, he did so own a farm of a certain value, can, in our opinion, have no probative force whatever in establishing his innocence of the matters charged in the indictment. He is not

charged with having made any such false statement, and even if he made it, it is not one of the statements upon which it is alleged the goods were delivered to him." *Ibid.* 4, 5. See *Underhill on Criminal Evidence* (3rd Ed.), sec. 645, note 51, pp. 888, 889.

In the case now at bar the record is that the traverser obtained from the bank $5,065.95, but at different times during the year 1930. In the one transaction in January, he obtained $2,000, in the one in February, $1,421.42, and the others were during July, August and September, and the seven checks paid ranged from $60 to $720 and aggregated $1,644.53. Only one question asked was directed to a specific month, and all the others referred to the whole year, and were so general in their nature as to permit an expression of opinion instead of eliciting the facts with respect to his assets and liabilities, or the amount of money he possessed. Furthermore, there was no proffer accompanying the questions whereby what was expected to be proved was shown to be material, so it does not appear that the exclusion of the answer was an injury to the traverser. To these formal defects, the more important substantive objection is that, within the doctrine applied in *Carnell v. State, supra,* the rejected evidence was not relevant to the specific facts constituting the pretense. The bank did not part with its money because of the confidence it repose in the financial responsibility and intention to pay of the defendant, but because of its faith and belief in the false pretense or representation of the defendant that a third party corporate had authorized and empowered the defendant to have charged to that third party's account in the bank for payment a specified order and certain checks. The uncontroverted circumstances, at the time of the making of every one of the false pretenses, were that the traverser did not have in the bank to his credit the several sums of money which he procured from the bank, but that the corporate third party did have in the bank ample deposits to meet the several sums obtained from the bank by the traverser; and that the bank actually charged

these sums to the deposit account of such third party with the bank, and, subsequently, was obliged to refund these sums to such third party because the charges so made were unauthorized. Thus it is clear that the representation did not involve the financial ability of the traverser to pay the bank any sum of money, but wholly related to the authority and power of the traverser to charge on his order a specific third party's ample deposit account in the bank with certain designated amounts. The financial condition of the traverser was, therefore, immaterial on the facts of this record, for the reason that it had no tendency to show the falsity and fraudulent intent of the representation by which the money was obtained by the traverser. *Supra.*

The remaining ruling on the evidence is the exception taken to the action of the *nisi prius* court in refusing to strike from the testimony all the checks and charge account, with all the evidence relative to them. This motion was made at the close of the State's testimony, and was a demurrer to the legal sufficiency of the evidence to support a verdict of guilty under any count of the indictment. The jury is made the sole judge of the law and the facts by the Constitution of Maryland, and it is for the jury to determine from all the evidence admitted whether or not the traverser is guilty or not guilty. The question has been so recently discussed and determined that it is sufficient to repeat that this motion cannot be entertained, and its rejection was not error. *Delcher v. State,* 161 Md. 475, 158 A. 37; *Rasin v. State,* 153 Md. 431, 138 A. 338; *Jessup v. State,* 117 Md. 119, 83 A. 140; *Garland v. State,* 112 Md. 83, 75 A. 631; *Dick v. State,* 107 Md. 11, 68 A. 286, 576; *Bloomer v. State,* 48 Md. 538.

Since no reversible error has been found, the judgment will be affirmed.

*Judgment affirmed, with costs.*

ADKINS, J., filed a dissenting opinion, as follows:

I cannot concur in the finding of the court in this case. The indictment is based on charges to the account of Franklin Credit & Finance Company in said bank of the following items: 1. A charge ticket with the name "Franklin Credit & Finance" attached in typewriting, directing the credit of $2,000 to the account of E. B. Simmons. 2. Eight checks drawn by the traverser on his personal account in said bank payable to various persons and signed by him. These were all admitted over the objections of the traverser, and exceptions were duly noted.

I do not find in the record a particle of evidence that the traverser had any knowledge of said ticket or that he authorized said checks to be charged to the account of the Franklin Credit & Finance Company, or had any knowledge of such charges. Both the traverser and the cashier of the bank testified that the traverser gave no such authority nor had any knowledge of these transactions. The cashier further testified that the charge ticket was made out by the cashier and that the entries were made by him or by his direction without authority from the traverser.

It seems to me that there could be no presumption that the typewritten name "Franklin Credit & Finance," attached to the charge ticket, was placed there by the authority or with the knowledge of the traverser, and it was error to admit that paper in evidence without some proof of such knowledge or at least a promise to follow up. It was not followed up, but the court refused to strike it out on motion duly made.

Nor should the checks have been admitted without proof, or offer of proof, that they were charged to the account of the Franklin Credit & Finance Company by the direction or with the knowledge of the traverser. The court refused to strike out the testimony as to these, notwithstanding the lack of any evidence of their relevancy.

If these rulings were erroneous, as I think they were, they were vital and highly prejudicial. They went to the root of the whole case.