GEORGE T. GAMBRILL vs. STATE OF MARYLAND.

*Criminal Law*: *false pretenses; fraudulent issue of warehouse receipts; evidence; absence of motive.* *Appeals*: *to Court of—; accounts and evidence; not in record.*

A traverser was tried for obtaining money under false pretenses upon an indictment which in substance amounted to a charge of having obtained money by fraudulently issuing certain warehouse receipts for goods that had already been withdrawn from bond and were hypothecated. It having been proved that the misrepresentation and wrongful issue of receipts had actually taken place, but that the receipts had not been actually filled up by the defendant, evidence was admissible to show whether or not the defendant, knowingly and with intent to defraud, directed the issue of the certificates with numbers which included those of outstanding receipts.

p. 208

In such a case evidence by the defendant that there was on hand, on storage, other similar goods unpledged, and that there was no motive for the fraudulent issuing of such certificates is admissible.                    pp. 211-212

The Court of Appeals will not pass upon accounts or other evidence not properly presented in the record, even though the same had been submitted to the inspection of the trial Court.                    p. 209

Evidence to show that the defendant had refused to certify to the correctness of certain other warehouse receipts was held not devoid of probative value.                    p. 208

To exclude evidence which may have been admissible is not a reversible error, when it appears that the same facts sought to be proved by such evidence have been establishd in the case by the admission of other evidence without exception.
                    p. 209

In such a prosecution, evidence that on a certain occasion, the traverser had said that he would be criminally liable if the company's warehouse receipts were duplicated, was *held* to be admissible, as indicating his individual responsibility for an unlawful issue of receipts.                    p. 213

*Decided April 8th, 1913*

Appeal from the Criminal Court of Baltimore City (ELLIOTT, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Clifton S. Brown* and *George Whitelock* (with whom was *Thomas C. Ruddell* on the brief), for the appellant.

*Roland R. Marchant* and *Edgar Allan Poe, the Attorney-General* (with whom was *Wm. F. Broening* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The appellant was tried and convicted in the Criminal Court of Baltimore City upon an indictment charging him with having obtained by a false pretense, which he well knew to be false, five thousand dollars current money, from

a certain George Schilling, with intent to defraud. In the bill of particulars it was stated in effect that on and prior to the 10th day of February, 1908, there was a corporation by the name of the Roxbury Distilling Company engaged in the manufacture, storage and sale of whiskey, and having an office in the City of Baltimore; that the defendant, George T. Gambrill, was the president of the corporation and Thomas Leishear was its treasurer; that the company had previously issued a warehouse receipt dated October 14th, 1907, and numbered 224 for 313 barrels of Roxbury Rye whiskey, serial numbers 52734 to 53046, inclusive, containing 15,-180.50 gallons, and the receipt had been delivered to the Merchants' National Bank of Baltimore as collateral security for a loan made by the bank to the company; that on or about the 10th day of February, 1908, the defendant, designing and intending to obtain from one George Schilling, $5,000.00 in current money, by means of false pretenses, and with the intention to defraud, directed Thomas Leishear, the treasurer of the company, to endeavor to negotiate a loan of $5,000.00 with Schilling upon a note of the Roxbury Distilling Company to be secured by a warehouse receipt or certificate for 313 barrels of whiskey belonging to the company and stored in one of its warehouses and being serial numbers 52734 to 53046, inclusive; that in pursuance of this direction the treasurer of the company, having no knowledge that the barrels of whiskey so designated had already been pledged to the Merchants' National Bank, negotiated a loan to be made by George Schilling upon the proposed security, which was represented to be ample for the purpose; that thereupon the defendant, well knowing that this whiskey was already pledged for an existing loan, and without having the outstanding receipt therefor returned and cancelled, and designing and intending to cheat and defraud the prospective lender, unlawfully and wilfully signed and caused to be issued a warehouse receipt of the Roxbury Distilling Company, dated February 10th, 1908, numbered 238 for 313 barrels of rye whiskey, serial numbers 52734 to 53046,

containing 15,180.50 gallons, being the same 313 barrels of whiskey then pledged to the Merchants' National Bank of Baltimore, and also signed as president of the company a promissory note, bearing the same date, for the sum of $5,000.00, due four months after date, drawn to the order of George Schilling, and delivered the note and receipt to the treasurer of the company and required him to deliver them to the payee of the note, or his agents; and that the treasurer, being without knowledge of the fraudulent and false pretenses recited, delivered the note, and the warehouse receipt as collateral security, to an agent of the lender and received his check, dated February 8th, 1908, and payable to the order of the Roxbury Distilling Company, for $4,796.67, being the amount of the loan less discount, and which check was delivered by the treasurer to the defendant and the company and was in due course of business converted into cash.

The bill of particulars also recited the provisions of section 6 of Article 14 and section 119 of Article 27 of the Code of Public General Laws of 1888 as being in force at the time of the offense charged and as prohibiting the issuance of any warehouse receipt for goods covered by an outstanding receipt until the first issued receipt was returned and cancelled or destroyed.

There are nineteen bills of exception in the record. The questions they present relate to the admissibility of evidence, and in order that they may be properly considered it will be necessary to define the controverted issue of fact to which the proof was directed. It was undisputed in the case that the warehouse receipt alleged to be fraudulent was actually issued as collateral security for the loan made by Mr. Schilling, and that the whiskey represented by the serial numbers contained in the receipt had been in fact previously pledged for an existing indebtedness. There was no contention that the *defendant* conducted the negotiation in connection with which the receipt was executed and delivered or that he received any part of the money thus obtained. The State's

own evidence shows that Mr. Leishear, the treasurer, procured the loan and that the proceeds were deposited in bank to the company's credit. The receipt was prepared by Mr. Codd, one of the clerks in the employ of the company, and was signed by both the president and treasurer. The promissory note for which the receipt was to serve as collateral security was executed in the same way, and both instruments were delivered to the lender by Mr. Leishear, who testified that he was unaware that the whiskey designated in the receipt was already hypothecated. It was testified by Mr. Codd that he inserted the serial numbers by order of the defendant. This statement does not appear to be contradicted by Mr. Gambrill except in so far as it imputes to him knowledge as to the duplication of the numbers. He testified that he never made up or filled out warehouse receipts, but he does not deny that he gave directions to Mr. Codd as to their preparation. He disclaims, however, any knowledge of duplications except in two instances which were brought to his attention by Mr. Codd and Mr. Leishear, respectively, and which do not affect the present inquiry.

It appears, therefore, that the real issue in the case was whether the defendant knowingly and with intent to defraud, as charged in the indictment, directed, in the particular transaction described, the use of serial numbers which were included in an outstanding receipt. The misrepresentation involved in the duplication having in fact occurred, the only question to be determined was whether the defendant's participation in it was the result of inadvertence or of a deliberate purpose to practice a false pretense. In the light of the issue thus defined the various exceptions will now be considered.

The first exception was taken to the admission of testimony by Mr. Leishear to the effect that in October, 1908, he had reported to Mr. Gambrill the proposal of a certain bank to lend the company a considerable sum of money on distillery warehouse receipts, provided they were certified, and that Mr. Gambrill had declined to certify the receipts on the

ground that if he did this for one bank, he would have to do it for all.   This evidence was offered on the theory that the defendant's refusal to furnish the proposed assurance as to the validity of the receipts indicated a guilty knowledge on his part as to the falsity of some of those already issued.   There is no proof as to how the certification of a warehouse receipt would be accomplished or how it would add to the security of the holder, and the proposal reported to Mr. Gambrill was made eight months after the duplication on account of which he is indicted.   But there was proof as to other duplications during a period which included the time of the proposal referred to, and the effort of the State was to show general guilty knowledge on the part of the defendant as to such occurrences with a view to proving criminal intent in the specific instance stated in the bill of particulars.   This was in accordance with the rule stated in *Carnell* v. *State,* 85 Md. 1.   The point of the defendant's objection to the special certification proposed was not that it would be impracticable or ineffective, but that it would be inconvenient, and we do not think the evidence excepted to was so devoid of probative force as to render its admission erroneous.

In proving other rehypothecations with which the defendant was sought to be connected the State introduced evidence as to the duplication of serial numbers which were included in a receipt issued and outstanding as collateral security for a promissory note which had been signed for the company by its vice-president.   The defendant objected to this proof on the ground that he had nothing to do with the execution of the note.   This objection was raised in the second bill of exception and it was properly overruled.   There was evidence tending to show that the defendant directed the insertion of the serial numbers in the receipt upon which the loan was obtained, and the fact that the note was executed by a different officer was entirely immaterial.

The third exception is unimportant.   Mr. Leishear, who was secretary as well as treasurer of the company, was asked

to locate in the minute book the record of a meeting at which a motion to have the books of the company audited was passed. He answered that it occurred in October, 1908. The evidence to which the exception was confined does not disclose what resulted from the adoption of the proposal to audit the books, or what was the position of the defendant on that subject. The question was merely preliminary to a further inquiry as to which no objection was interposed, and we see no error in the ruling reviewed on this exception.

The fourth, fifth and seventh exceptions refer to the refusal of the trial Court to admit in evidence a check book of the company containing a number of checks signed in blank by the appellant as president, and to allow questions to be asked as to the number of blank warehouse receipts which he had similarly signed and left in the company's office. It was the obvious purpose of these officers to show that the defendant did not maintain a close supervision over the details of the transactions in which the checks and receipts were customarily used. The precise facts, however, to which these exception relate were established without contradiction by other evidence, as to which there was no objection, and the exclusion of the offered proof, if erroneous, was not injurious and reversible.

By the sixth bill of exception it appears that Mr. Leishear, the treasurer, who had testified in chief for the State, was asked on cross-examination as to his account with the company. It was stated to be the object of this inquiry to show the relation of the witness to the company and to prove certain entries made by him in his account on its ledger which might reflect on his credibility. The account was submitted to the inspection of the trial Court, but is not included in the record. We have, therefore, no means of passing upon its admissibility.

The eighth, ninth, tenth, twelfth, thirteenth and fifteenth exceptions were reserved to the refusal of the Court below to admit testimony as to the number of barrels of whiskey the company had in storage at the time of the alleged false pre-

tense, and as to its financial condition at that period, and as to the difficulty of ascertaining from its books whether warehouse receipts were duplicated. It was proposed to elicit this information from an expert accountant who was called as a witness for the defendant and who testified that he had made a thorough examination of the company's books. The treasurer had testified on behalf of the State that the company "was hard up nearly all the time." He further stated that in February, 1910, two years after the offense charged, and just before the appointment of receivers for the company, it was discovered that there were receipts outstanding for 25,000 barrels of whiskey while only 18,000 barrels were in the company's warehouses. The State in its brief begins its recital of the facts with a reference to the necessitous condition of the company in February, 1908. The plain purpose of the evidence thus adduced as to the financial condition of the company was to suggest a motive for the fraud of which its president is accused, and the object of the testimony as to the over-issue of receipts discovered in 1910 was to show the probability of his having had guilty knowledge of the duplications. No question was raised as to the admissibility of this evidence, but the proof to the contrary proposed to be introduced by the defendant was objected to and excluded on the ground that it was not pertinent to the issue.

The case of *Carnell* v. *State, supra,* is cited in support of the exclusion of evidence offered by the defense as to the financial condition of the company. In that case the defendant was charged with having obtained a suit of clothes upon the false pretense that the check he gave in payment was drawn against a bank deposit of a stated amount. The proof showed without dispute that he had no deposit whatever in the bank which he had named and on which the check was drawn. The defendant sought to prove that he was the owner of real estate in Virginia, but this was held to be immaterial for the reason that he was not charged with having made a false statement as to his ownership of such property. It is

clear, we think, that the question thus determined was altogether different from the one with which we are now concerned. The issue here, as already indicated, is whether the misrepresentation charged and admitted was made by mistake or by design, and it is contended that the excluded evidence was relevent to that specific inquiry. The defendant's object was to negative the existence of motive and to support his denial of guilty knowledge by showing that the company of which he was president, and which was the exclusive beneficiary of the transaction, was in a sound financial condition at the time and had in storage a quantity of whiskey for which no receipts had been issued, and that the books of the company, which were proven to have been kept by other agents, did not readily disclose the condition of outstanding receipts with respect to duplication. If there was in fact an ample supply of unpledged whiskey at the company's disposal, if its assets were considerably in excess of its liabilities, and if there was no adequate means of information as to what serial numbers were already hypothecated, the defendant insists that he should have been permitted to prove these circumstances as tending to sustain the theory that he could have had no motive for resorting to fraud and deceit in order to secure for his company a loan which could readily have been obtained upon the same kind of security by honest methods, and as indicating the probability that the duplication mentioned in the bill of particulars was entirely inadvertent.

The considerations thus submitted would seem to be quite important from the standpoint of the defense here interposed. The exclusion of the evidence offered in this connection left the defendant's case without any elements of proof to which he might refer the jury in aid of his disavowal of criminal intent. It limited his defense to a bare denial, while the State could point to the evidence it had adduced of collateral facts tending to show motive and knowledge. In our opinion the defendant's proof was unduly restricted by the rulings now under review. The evidence he

desired to offer was distinctly pertinent to the issue of guilt or innocence under the special conditions shown by this record. Since the treasurer of the company, who was interested in its finances and who contracted the loan involved in this case, was unaware that the receipt he signed and delivered as security contained duplicated numbers, it is conceivable that the president may have been under the same misapprehension, and he was entitled to support his testimony as to his want of guilty knowledge and intent by proof that the surrounding circumstances were consistent with that defense. This was a vital feature of the defendant's case, and as the exclusion of the proposed testimony was necessarily prejudicial, we have no alternative but to hold that this action of the trial Court was reversible error.

The eleventh exception was taken to the disallowance of a question propounded to Mr. Gambrill as to the state of his account with the company in February, 1910. This was irrelevant to the inquiry as to the defendant's responsibility for a misrepresentation made two years previously and the ruling on the offer was proper.

In the cross-examination of Mr. Gambrill he was asked what were his duties from 1907 to 1910. He replied that his duties were to have the whiskey sold and do everything else for the good of the company except to keep the books. He added: "We were fighting for the Pure Food Law; I had been fighting since 1902 and that took oceans of my time." There was objection made to the latter statement and it was stricken out as not responsive. This action is the basis of the fourteenth exception. While we are inclined to the view that the sentence eliminated is not open to the objection urged, we do not regard the point as of sufficient importance to the defendant's case to render the ruling reversible.

The rulings to which the sixteenth and seventeenth exceptions were reserved merely permitted a witness to testify as to a conversation with Mr. Gambrill in which he was represented as saying, in reference to a proposed transaction, that

he would be criminally liable if the company's warehouse receipts were duplicated. As indicating the defendant's appreciation of his individual responsibility for an unlawful issuance of receipts we think this evidence was competent.

The eighteenth exception was taken to the admission of testimony in rebuttal by a former director of the company as to why he resigned. The reasons he assigned were that he had too much business of his own to be able to give his attention to the affairs of the company, and that he did not like the management. There is nothing to show when the witness retired as a director or in what particular the management of the company did not meet with his approval. The testimony was indefinite and irrelevant, but there is no reason to suppose that it was prejudicial to the defense.

There remains only an exception to the allowance of proof by the State that Mr. Gambrill was the dominating influence of the company. This evidence was offered in rebuttal, and as it does not tend to contradict any testimony for the defense appearing in the record, we see no reason for its admission. It could do no injury to the defendant, however, and this action is, therefore, not reversible.

But the rulings reviewed upon the eighth, ninth, tenth. twelfth, thirteenth and fifteenth exceptions deprived the appellant of material evidence upon which he was dependent for the proper presentation of his defense, and for these errors we must reverse the judgment and remand the case for a new trial.

> *Judgment reversed, with costs to the appellant and new trial awarded.*