590 A.2d 177

Jessie **JACKSON**

v.

**STATE of Maryland.**

**No. 1008, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 29, 1991.

Clarence W. Sharp, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Argued before ALPERT, ROSALYN B. BELL and DAVIS, JJ.

ALPERT, Judge.

At the centerpiece of this appeal is the question of whether the trial judge abused his discretion in precluding evidence of a lack of motive to rebut the evidence of motive introduced by the prosecution. A careful review of the law suggests that he did.

At approximately 7:55 p.m. on November 16, 1989, someone firebombed the front of the Chong home, located near Fort Meade. Although the front doorway was charred, the fire did not spread. After noticing the fire, the Chongs' daughter, Sun Chong, went to the kitchen, located in the back of the house, and called the police. While on the phone, Sun Chong was struck in the chest by a nine millimeter bullet, fired through a window located at the back of the kitchen. Sun Chong died later that evening as a result of the gunshot wound.

As part of its case in chief, the prosecution offered evidence intended to show that appellant, who was a military police sergeant stationed at Fort Meade, had a motive for committing the arson and the murder. Specifically, the prosecution introduced the fact that appellant knew he was a suspect in the rape of Suk Chong, the mother of the deceased. Additionally, the prosecution showed that appellant knew that there was a military Article 32 hearing scheduled for November 27, 1989 to determine whether there was sufficient evidence against him to proceed with a general court martial.

Although the prosecution was allowed to offer this evidence of motive, the trial court repeatedly precluded the defense from introducing evidence to show that appellant lacked motive, despite repeated proffers by counsel for the defense. According to appellant, the defense would have shown that appellant was confident that the charge of rape would be dismissed at the outcome of the Article 32 hearing. Therefore, appellant argues, it would have been estab-

lished that there was no motive for appellant to commit the arson and the murder.

At the trial, the prosecution presented the testimony of Detective Ronald Bateman of the Anne Arundel County Homicide Unit, who arrived at the scene approximately forty-five minutes after the event and conducted the investigation of the crimes. Bateman testified that he observed that the brick underneath the picture window at the front of the house was charred, as were the outside wooden overhang and the inside second floor rafters. The lower right-hand portion of the picture window was slightly cracked and melted. Bateman found pieces of broken glass on the shrubbery and lawn in front of the window. In the back of the house, Bateman found more broken glass and noticed that there was a single hole in the window. Beneath the window, a shell casing was discovered on the ground.

When the glass fragments found under the front window were reconstructed and parts of a label could be discerned, Bateman supervised and participated in the check of thirty-six liquor, grocery, and convenience stores in the surrounding areas of Fort Meade, Odenton, Severn, and Laurel, in order to find a similar bottle. A Giant Food store in Laurel that was within walking distance of the apartment Jackson shared with his girlfriend, Vanessa Finney, was the only store that carried a similar or identical bottle. The bottle was found to contain a forty-six ounce Tropicana Twister orange raspberry fruit drink. Bateman stated that when he interviewed Vanessa Finney, Jackson's girlfriend, she gave him a similar bottle from her trash can.

Pursuant to his investigation, Bateman learned that the victim's mother, Suk Chong, previously had accused Jackson of a crime against her. Bateman then questioned Jackson, who denied owning or shooting a nine millimeter pistol. Jackson further denied owning a long, dark coat, and claimed that he only had a long, dress blue military coat. Upon obtaining a search warrant for the apartment Jackson shared with Finney, Bateman found a box of nine millimeter bullets. Moreover, when Jackson was arrested

on November 22, 1989, he was wearing a long, black dress coat.

Bateman learned that the bullets found in the apartment had been manufactured on May 5, 1989 by the Winchester Company. Bateman traveled to Wilkes County, Georgia, to a gun store near the home of Jackson's parents, in order to locate the origin of the gun. The proprietor of the Easy Pawn and Gun Store in Washington, Georgia, Charles Walker, testified that on July 21, 1989, he sold an X–Cam TA90 nine millimeter pistol to Frances Jackson, Jackson's mother, in the presence of Jackson, who had picked out the gun, and another woman.

Bateman visited Jackson's parents while he was in Georgia, and was shown the area in which Jackson and his father had practiced shooting the gun. Bateman found twenty-one nine millimeter shell casings that he then sent to the F.B.I. for testing. The shell casing found under the Chongs' back window and the twenty-one casings found in the Jacksons' yard were determined to have been fired by the identical firearm.

Further evidence was presented that revealed that Jackson had purchased a nine millimeter pistol shoulder holster from a gun shop in Severn on July 31, 1989.

Other witnesses for the State included Pfc. Patrick A. Barry, a military police officer stationed at Fort Meade, who testified that while riding to a firing range with Jackson on November 2, 1989, he had mentioned to Jackson that he was looking to purchase a nine millimeter gun. Jackson told Barry that he had one in his parents' home in Georgia.

A fire investigator with the Fire Marshal's Office, Carlos Downs, opined that the fire at the Chong house had been set intentionally. The fire's perpetrator had ignited a container of highly flammable liquid—mostly gasoline—and tossed it against the front of the house. Gas chromotography tests established the presence of gasoline where the glass pieces were found.

Felicia Bradham testified that a little before 8:00 p.m. on the evening of November 16, 1989, she had driven up to her ex-boyfriend's house, which was located two houses away from the Chong residence. Her car lights were still on when she observed a black male wearing a long black coat walk about eight feet in front of her car. Bradham testified that the coat she saw that night was the same one that police officers later showed to her, namely, the one that Jackson was wearing when arrested.

Charles Schneider, who had been incarcerated at the Anne Arundel County Detention Center on Thanksgiving Day afternoon, 1989, testified that he had attended his bail review hearing with Jackson, and then was placed in a cell next to Jackson. According to Schneider, he overheard Jackson tell the others in his cell "something to the effect, 'the bitch accused me of raping her and I showed her.'"

The defense produced six witnesses who testified that they had seen Jackson at the barracks at Fort Meade between 7:00 and 8:30 p.m. during the party on the night of November 16, 1989. Although none of the witnesses continuously had been with Jackson during this time, they had seen him in the barracks throughout this time period. Counsel for the defense noted in his closing argument that the barracks were 3.9 miles away from the Chong home.

Jackson testified at length in his defense. He explained that he had purchased a nine millimeter gun and a box of cartridges for his father while on leave in Georgia. He and his father had done some target shooting in the backyard. The gun was stored in the house and he left the remaining bullets in the trunk of a car. Jackson stated that he had purchased the shoulder holster to use in his army duties because the military police were beginning to use nine millimeter weapons.

Jackson then described his actions during the G.I. party held at the barracks from 6:15 p.m. until approximately 8:30 p.m. on the night of November 16, 1989, the night of the firebombing. Jackson denied leaving the barracks during

this time. He specifically denied firebombing the Chongs' house and shooting Sun Chong.

The court precluded Jackson from testifying about the charges brought against him by Suk Chong. He was, however, permitted to describe his brother, James, who had been in the area in late April and early May, 1989. This evidence was produced for the purpose of establishing that Jackson's brother could have been the one who committed the crimes.

Lawrence Kerr, an attorney representing Jackson in the Article 32 hearing, and a major in the United States Army, testified that he was present when Bateman interviewed Jackson on November 17, 1989. According to Kerr, there was no mention of a nine millimeter weapon during the interview. He stated that he asked Bateman and Detective Rzepkowski, the other investigator, questions regarding what type of weapon was involved; they responded that they were still investigating it. Kerr remembered that Jackson had been questioned about whether he owned a long, dark coat, and said that Jackson had replied that he had a long, dark, blue coat. Finally, Kerr said that when he told the investigators about Jackson's alibi, Bateman "said that he would get around it."

Appellant had been charged with murder, arson, possession and use of a molotov cocktail, manufacture of an explosive device, two counts of handgun offenses, and two counts of obstruction of justice. After a jury trial was held in the Circuit Court for Anne Arundel County on April 26, 27, and 30 and May 1, 1990, Jackson was convicted of first degree murder and arson. On June 14, 1990, appellant was sentenced to life imprisonment for the murder, and thirty years imprisonment for the arson, to run consecutively.

Appellant raises four issues on appeal:

I. Did the trial court err in precluding appellant from showing a lack of motive by introducing evidence of the facts and outcome of another crime charged against appellant by the victim's mother while permitting the

State to introduce evidence of the bare charge to supply a motive for these alleged offenses?

II.   Did the trial court err (A) in instructing and allowing the jury to consider first degree felony murder and the theory that appellant could be found guilty as an accessory before the fact and (B) in failing to determine the basis for the first degree murder verdict?

III.   Was the evidence presented sufficient to support the convictions?

IV.   Did the trial court commit plain error in failing to instruct the jury on the elements of the crime of arson, both as a substantive crime and as the basis for felony murder, and in failing to instruct the jury on accessory before the fact to arson?

As we hold that the trial court did err in regard to the first issue, we shall reverse the judgments and remand the case for a new trial.   We find no merit in appellant's remaining arguments.   Nevertheless, we shall address the second and third issues for the guidance of the trial court upon remand.   We shall not address the fourth issue, regarding jury instructions as to arson, as we trust that the court and counsel will recognize the need to promulgate any necessary instructions and will act accordingly.

## I.

Appellant argues that Maryland case law requires that a defendant be allowed to offer evidence of lack of motive to rebut the prosecution's evidence of motive.   The State contends that this issue is not preserved for appeal because appellant failed to make a formal proffer at trial.   This claim by the State is without merit.[1]   Additionally, the State argues that the trial judge was fully within his discretion

---

1.   The proffer, *inter alia*, represented that Jackson was unconcerned about the pending charges because of two alleged misidentifications by his accuser and further, because of the existence of three alibi witnesses.

when he found that appellant's proposed evidence was irrelevant, and thus inadmissible.

The first question to ask is whether evidence of lack of motive is relevant. If it is relevant, then it must be determined whether the evidence is otherwise excludable under any of the categorical exclusions. If the evidence is relevant and not otherwise excludable, it must be determined whether excluding it in the instant case constituted reversible error.

## A. *The Evidence is Relevant*

In *Jacobs v. State,* 45 Md.App. 634, 415 A.2d 590, *cert. denied,* 288 Md. 737 (1980), Judge Charles E. Moylan, Jr. summarized the goal of the Maryland law (and common law) of evidence: "[To] keep out all that might obscure the truth ... [and] allow in all that will further the search for truth." *Id.* at 644, 415 A.2d 590. As in other states and under the Federal Rules of Evidence, the threshold question on the admissibility of evidence in Maryland is whether the proffered evidence is relevant.

A fact is relevant if it "tends to establish or disprove a material fact." *Campbell v. State,* 65 Md.App. 498, 508, 501 A.2d 111 (1985), *cert. denied,* 305 Md. 599, 505 A.2d 856 (1986). On the other hand, "evidence which does not tend to establish or explain the facts and circumstances of the case is [irrelevant and thus] inadmissible." *Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582 (1948). *See also Wilson v. Morris,* 317 Md. 284, 290–91, 563 A.2d 392 (1989). Clearly, the question of whether a given fact is "material," and thus relevant, depends on the underlying facts of the case. "Evidence is material if it tends to establish a proposition that has legal significance to the litigation." *Paige v. Manuzak,* 57 Md.App. 621, 632, 471 A.2d 758, *cert. denied,* 300 Md. 154, 476 A.2d 722 (1984).

In the instant case, the prosecution's introduction of pending rape charges against appellant led to a strong inference that appellant had a motive for harming Suk

Chong. Indeed, the prosecutor waved the alleged motive before the jury like a red flag. By introducing the rape charge as a motive, the prosecution made appellant's state of mind a relevant issue. In the face of this strong inference of motive, any evidence which appellant could have offered to rebut this inference of motive was clearly relevant.

B. *Evidence of Motive is not Categorically Excluded*

Although relevant, evidence may be excluded if it is deemed unfairly prejudicial to the defendant, *see generally Nast v. Lockett,* 312 Md. 343, 370, 539 A.2d 1113 (1988), or needlessly confusing to the trier of fact. *See Worthington v. State,* 38 Md.App. 487, 495–98, 381 A.2d 712, *cert. denied,* 282 Md. 740 (1978).

Generally, evidence of other crimes committed by the defendant is inadmissible under the "unfairly prejudicial" exception due to the danger that such evidence may prevent a fair and impartial consideration of his guilt in the present case. *See Neam v. State,* 14 Md.App. 180, 186–190, 286 A.2d 540 (1972). This prohibition extends to pending criminal charges as well. *See id.; see also Arbaugh v. Director,* 27 Md.App. 662, 665, 341 A.2d 812, *cert. denied,* 276 Md. 737 (1975).

There are, however, two major exceptions to this general prohibition against "other crimes" evidence: (1) the "MIMIC" exceptions, in which the prosecution can use prior crimes to show motive, intent, absence of mistake, identity, or common scheme; and (2) the "opened door" exception, in which a party may introduce rebuttal evidence after his opponent has "opened the door" to such evidence. *See generally* Murphy, *Maryland Evidence Handbook,* §§ 505(B); 518(E)(1)–(4) (1989).

(1) MIMIC Exception

In admitting evidence of "other crimes" under the "MIMIC" exceptions, Maryland is in accord with other

jurisdictions and with the Federal Rules of Evidence. *See* FRE 404(b). Under the motive exception, the evidence tending to show a motive in the instant case was properly admitted. The trial judge, within his broad discretion, properly held that reasonable minds could discern a motive to commit the subsequent crimes based on evidence of the alleged former crime. The inference to be drawn here was that appellant had a motive to harm or intimidate Suk Chong because she would be a witness in the upcoming rape hearing.

According to the *Maryland Evidence Handbook*, § 518(E)(1) at 186, "[a]lthough motive is neither an element of the crime nor a defense to it, absence of a motive is circumstantial evidence of innocence, and presence of a motive is circumstantial evidence of guilt." In arguing that he should have been permitted to rebut the evidence of motive, appellant relies on *Gambrill v. State*, 120 Md. 203, 87 A. 900 (1913), which stands for the proposition that once the prosecution has introduced evidence of a motive for fraud, it is reversible error for the trial judge to preclude a defendant from introducing evidence which tends to disprove motive. In *Gambrill*, the financial soundness of a company was put in issue by the prosecution in an effort to show motive for fraud by the company's president. *Id.* at 210, 87 A. 900. The Court of Appeals held that the defendant must be allowed to rebut such evidence through proof of financial soundness. *Id.* at 211–12, 87 A. 900. Excluding the testimony was "necessarily prejudicial" because defendant was limited to a

> bare denial, while the State could point to the evidence it had adduced of collateral facts tending to show motive and knowledge.... [The defendant] was entitled to support his testimony as to his want of guilty knowledge and intent by proof that the surrounding circumstances were consistent with that defense.

*Id.*

The rule in *Gambrill* is reflected in other jurisdictions around the country. Some of these cases are collected in 22

C.J.S. *Criminal Law* § 726 (1989) at 370, which states that "evidence tending to show motive is always relevant and admissible ... where the ... accused denies the commission of the crime.... Evidence tending to show a lack of motive is likewise relevant and admissible."

Appellant also relies on *Pierce v. State,* 62 Md.App. 453, 456, 490 A.2d 261 (1985), where this Court explained that evidence of voluntary surrender is admissible to rebut the inference to be drawn from evidence of flight. By analogy, appellant ought to be able to offer evidence of lack of motive to rebut the inference to be drawn from the evidence of the pending rape charges.

### (2) "Opening the Door"

It is explained in the *Maryland Evidence Handbook,* § 505(B) at 151, that "[t]he 'opening the door' doctrine applies when one party offers admissible evidence, and the opposing party seeks to counter that evidence with evidence that is admissible for no purpose other than as a response to the admissible evidence introduced by the other side." In the instant case, it seems that appellant's only purpose for introducing evidence that he had no motive to harm the Chong family was to respond to the evidence introduced by the State that he did have such a motive. He should have been permitted to do so, both as a matter of common law principles and as a matter of fundamental fairness.

### II.

Appellant next contends that the trial court erred: (A) in instructing and allowing the jury to consider (1) first degree felony murder and (2) the theory that appellant could be found guilty as an accessory before the fact; and (B) in failing to determine the basis for the first degree murder verdict.

### A. *Jury Instructions*

### (1) Felony Murder

We will first address the propriety of allowing the jury to consider first degree felony murder. Under the Maryland

felony murder rule, the State must show that the murder occurred in the course of the felony. Md.Ann.Code art. 27, §§ 408–410.[2] Section 408 states: "All murder which shall be committed in the perpetration, or attempt to perpetrate any arson, shall be murder in the first degree."[3] The question on appeal, therefore, is whether the death by gunshot, deemed in itself to be sufficient to support a finding of first degree premeditated murder, can be considered to be linked causally to the arson.

As Wharton said in his classic treatise, in order for felony murder to apply, the killing:

> must have been done in pursuance of the unlawful act, and not collateral to it. The killing must have had an intimate relation and close connection with the felony, and not be separate, distinct, and independent from it.... The death must have occurred as a result or outcome of the attempt to commit the felony.

Wharton, *Homicide* § 126 (3d ed. 1907) at 184.

The Maryland Court of Appeals recently had occasion to reaffirm the common law requirement of a close nexus between the felony and the homicide. In *Campbell v. State*, 293 Md. 438, 451, 444 A.2d 1034 (1982), the Court stated: "Because of the extreme penalty attaching to a conviction of felony murder, a closer and more direct causal connection between the felony and the killing is required than the causal connection ordinarily required under the tort concept of proximate cause." Similarly, this court has stated before that the felony murder rule is "circumscribed by 'causation' requirements.... In sum, there must be a direct causal connection between the homicide and the felo-

---

**2.** In his brief, appellant incorrectly cites § 410 as the relevant statute to this case. The actual statute in question is § 408, "Murder Committed in Perpetration of Arson."

**3.** Perpetration has been defined as: "The act of one committing a crime either with his own hands, or by some means or instrument or though some innocent agent." *Black's Law Dictionary* (5th ed. 1979) at 1027.

ny. Something more than mere coincidence in the time and place between the two must be shown; otherwise, the felony-murder rule will not be applicable." *Mumford v. State,* 19 Md.App. 640, 644, 313 A.2d 563 (1974).

The presence or absence of causation in felony murder is generally a question of fact for the jury. *See Mumford,* 19 Md.App. at 644, 313 A.2d 563. It has been stated that: "The issue of whether a killing is in the commission or attempted commission of a felony is generally a jury question, except where the homicide clearly is or is not in the commission as a matter of law." LaFave & Scott, *Criminal Law* § 7.5(f) (2d ed. 1986) at 636 n. 98.

In the instant case, there is little doubt that the arson and the shooting were not mere coincidence. It is arguable that the only inference to be drawn from the gunshot is that it was intended to kill and that therefore the felony murder rule is just not applicable. But it is equally arguable that because the victim had telephoned to report the fire before being shot that the arson was linked to the death, *i.e.,* the shooter was attempting to prevent the cessation of the fire, thus furthering the arson. In any event, whether the subject homicide "occurred as a result or outcome of the attempt to commit the felony" of arson is a matter that a jury will have to decide. *Wharton* at 184.

### (2) Accessory Before the Fact

Next, we turn to the question of whether there was sufficient evidence presented to allow the jury to consider whether appellant was guilty as an accessory before the fact. In our view, the evidence was sufficient. Therefore, there was no error in the trial court's instruction that appellant could be found guilty as an accessory before the fact.

In Maryland, an accessory before the fact has been defined as "one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or

constructively at the moment of perpetration." *State v. Ward,* 284 Md. 189, 197, 396 A.2d 1041 (1978).

In attacking the sufficiency, appellant quarrels primarily with the State's offering alternative theories of criminal responsibility.[4] He apparently contends that appellant's status as an accessory cannot rest upon circumstantial evidence alone and that the jury should not be permitted to "pick and choose" among the State's offerings in order to arrive at a guilty verdict. This argument fails for two reasons.

▮▮▮▮ First, a defendant's conviction may rest on circumstantial evidence alone. *See Wilson v. State,* 319 Md. 530, 536, 573 A.2d 831 (1990); *Veney v. State,* 251 Md. 182, 201, 246 A.2d 568 (1968), *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969). The potential harshness of this rule, however, always has been circumscribed. As the Court of Appeals has explained:

> To ensure that the trier of fact bases a finding of guilt on the appropriate degree of certainty, we have long held that a conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence.

*Wilson v. State,* 319 Md. at 536–37, 573 A.2d 831 (emphasis in original). We are convinced that a jury could find the evidence produced at trial was, when "taken together ... inconsistent with any reasonable hypothesis of innocence." *Id.* A review of the record below establishes that the evidence tended to show that: (1) there was an arson; (2) appellant had a motive to commit the arson; (3) appellant

---

4. From the evidence, the jury could have decided that
  (1) appellant left the barrack, reached the scene, threw the fire bomb, and ran to the back of the house to fire the shot, or (2) appellant left the barrack with another and either threw the fire bomb while another person shot or fired the shot after the fire bomb went off, or (3) procured others to commit the crimes while he remained at the barracks.
  Brief for Appellant at 20.

was connected to the murder weapon; (4) appellant was connected to the incendiary device; (5) appellant lied to police during their investigation of him; and (6) appellant may or may not have been present at the scene.

Second, all three of the State's theories were consistent with the evidence. The State argued, in short, that appellant was either (1) the sole principal who perpetrated the criminal acts; (2) one of two or more principals; or (3) an accessory before the fact. We agree with appellant that there are situations in which multiple theories of a case may not comport with basic notions of fairness and due process. The instant case, however, is not one. The State's three theories of the case were all closely related and consistent with the evidence presented. Therefore, we perceive no error.

### (B) *Basis for Verdict*

■ Next, we address appellant's contention that the trial judge committed reversible error by failing to instruct or supply a verdict sheet to determine the basis for the jury's verdict of first degree murder. We agree that instructions and a verdict sheet should have been supplied. This can be accomplished at a new trial.

### III.

Finally, appellant contends that the evidence was insufficient to support his convictions for first degree murder and arson. Our discussion *supra,* on "Accessory Before the Fact," adequately explains our reasons for holding that the evidence was indeed sufficient to support the convictions.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL; COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.