637 A.2d 1197

Michael GRAVES

v.

STATE of Maryland.

No. 45, September Term, 1993.

Court of Appeals of Maryland.

March 9, 1994.

John L. Calhoun, Assigned Public Defender (Stephen E. Harris, both, on brief) Baltimore, for petitioner.

George E. Burns, Assigned Public Defender, (Stephen E. Harris, Public Defender, on brief) Baltimore, for amicus curiae.

Diane E. Keller, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., both, on brief) Baltimore, for respondent.

Argued before MURPHY, C.J., and RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI, and BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

KARWACKI, Judge.

Petitioner, Michael Graves (Graves), was charged with assault upon Derek Jones (Derek) and David Jones (David) and attempted robbery of Derek with a dangerous and deadly weapon. Graves pleaded not guilty and prayed a jury trial in the Circuit Court for Baltimore City. The jury convicted Graves of both assault charges but acquitted him of attempted robbery. Graves was sentenced to ten years imprisonment, all of which was suspended, for assaulting Derek; to a consecutive ten years imprisonment, all but five years of which was

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

suspended, for assaulting David; and he was placed on five years probation, to commence upon his release from incarceration.

Graves appealed to the Court of Special Appeals, raising numerous issues, including the following two which are relevant to our review: (1) whether the trial court erred in denying Graves' motion to strike the appearance of the Office of the Public Defender due to a conflict of interest; and (2) whether the trial court erred in admitting Officer John Reynolds' testimony and his record of extrajudicial statements of Kenneth Trusty. The intermediate appellate court remanded the case to the trial court as to the first issue and affirmed the judgments on all the remaining issues presented. *Graves v. State*, 94 Md.App. 649, 619 A.2d 123 (1993).

We granted Graves' petition for certiorari on the above two issues. Because we shall reverse the judgments on the evidentiary issue and remand the case to the circuit court for a new trial, we need not address the conflict of interest issue.[1]

---

1. Graves was represented at trial by Angela Shelton (Shelton), an Assistant Public Defender. On October 16, 1991, the day after the jury was impanelled and sworn, Shelton asked the trial judge to strike the appearance of the Office of the Public Defender on behalf of Graves due to a conflict of interest. Shelton informed the judge that the Office of the Public Defender had discovered that morning that it had also represented Graves' co-defendant, Kenneth Trusty. Trusty, who was also charged in the Circuit Court for Baltimore City with the assaults upon Derek and David, entered a guilty plea. The Office of the Public Defender entered its appearance on behalf of Trusty on August 15, 1991.

Shelton stated to the court that her representation of Graves created "a serious conflict" because Trusty had named Graves as his accomplice. She also claimed that the Office of the Public Defender "no longer has the power to panel attorneys when a conflict arises, so we ask the court to excuse the Public Defender's office and have an attorney appointed for Mr. Graves in this matter." The Office of the Public Defender apparently instituted this policy against assigning cases to private attorneys due to a lack of funds. The trial judge noted that this policy took effect on September 3, 1991, but the Office of the Public Defender had agreed to continue representation in any cases commenced before that date. Because the office entered its appearance on August 15, 1991, the trial judge stated that the Public Defender's appearance would not be stricken and the trial would proceed.

I

At approximately 6:15 a.m. on May 28, 1991, Derek was sitting on the steps of a store, waiting for a bus at the corner of Chester and Madison Streets in Baltimore City. At that time, Derek noticed two men walk past him. About two minutes later, the men returned and stood in front of him. One of the men pulled out a gun and said, "Don't move."

Derek Jones' father, David Jones, witnessed the incident and crossed the street toward Derek. David "asked what the trouble was." When the two men looked at David, Derek pushed the gun away and ran down Chester Street. The two assailants then walked down Madison Street. Both Derek and David called the police.

The police arrived at Derek's house three to five minutes later and drove Derek through the neighborhood looking for the suspects. Derek told the police that one man wore light blue shorts and the man with the gun wore red shorts and a white shirt. Later that morning the police arrested Kenneth Trusty (Trusty), who told the arresting officer, John Reynolds, that Graves had been his accomplice. Derek identified Trusty as the man who wore the light blue shorts.

Based on this information, the police prepared a photographic array which was shown to Derek later that same day. Derek identified the photograph of Graves as that of the gunman. At trial, both Derek and David identified Graves as the gunman. Nevertheless, the only witness called by Graves at trial, the assistant public defender who had represented him at a preliminary hearing in the District Court of Maryland in the instant case, testified that at that hearing neither Derek nor David recognized Graves although both had a good opportunity to view him in the courtroom.

---

We were advised at oral argument that, if this case is remanded for a new trial, the budget of the Office of the Public Defender will permit assignment of this case to an attorney outside of the Office of the Public Defender.

Trusty was not called as a witness to testify against Graves. Instead, over Graves' objection the trial court permitted Officer Reynolds to testify on direct examination that when Trusty was arrested he had told him the other individual involved in the attempted robbery of Derek was Graves.

Officer Reynolds also testified that when he received that information he wrote Graves' name in a small notebook that he used to record details of his police activities. After testimony in which Reynolds described in detail how he used the notebook in relation to his work, the trial court admitted the notebook into evidence.

## II

At Graves' trial, Officer Reynolds testified as to the events that immediately followed the apprehension of Trusty. The following direct examination ensued:

"Q  [Prosecutor]: Did you have an opportunity to talk to [Trusty]?

A  [Reynolds]: Yes.

Q  And about what did you talk to him?

A  About the other individual.

Q  Which other individual?

A  The one that was still at large.

Q  Did he give you a name—?

MS. SHELTON: Objection.

THE COURT: Overruled.

A  Yes. He said his name was Michael Graves.

Q  What did you do with the name?

A  I recorded it in my small—I carry a small notebook with each date of when I work and my car number and I recorded the name.

MS. SHELTON: Objection."

After the State moved to admit the notebook into evidence, the court requested defense counsel to state the reasons for her objection. She explained:

"These are his personal notes. It's not quite in the normal course of business. This doesn't reflected [sic]—necessarily for police officers on duty to keep this particular type of report and notebook. These are his personal notes. It's just a name there, no other identification. This is just a name he jots down.

"I don't think this is kept during the course of business. This a personal book. The—have an opportunity to ask questions about this book. I just don't think that's considered a business record for the purposes of having it admitted at this point into evidence."

The State proffered that "there's nothing personal about it. It's the book that he keeps in conjunction with his work. Those are his records that he keeps." The court then admitted the entire notebook into evidence.

Graves contends that the trial court erred in admitting oral and written hearsay evidence, violative of his right to confront an adverse witness, when the court: (1) allowed Officer Reynolds' hearsay testimony to the effect that Trusty said Graves was his accomplice; and (2) admitted into evidence Officer Reynolds' notebook where the officer had recorded Graves' name when Trusty told the officer that Graves was his accomplice.

■■■■■ Graves takes exception to the testimony of Officer Reynolds, wherein Reynolds testified that Trusty, when arrested, had named Graves as his accomplice. Graves claims that this testimony is inadmissible because it contains a statement made by an out-of-court declarant, offered to prove the truth of the matter asserted.[2] Graves objects to the admission

---

2. Under Maryland case law, hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *Ali v. State*, 314 Md. 295, 304, 550 A.2d 925, 929 (1988). When offered to prove their truth, such hearsay statements are inadmissible. *Id.* On December 15, 1993, this Court codified the state's evidentiary rules by adopting Title 5 of the Maryland Rules of Procedure. Modeled after the Federal Rules of Evidence, Title 5—Evidence represents the culmination of five years of research, discourse, and drafting by this Court's Standing Committee

of the notebook because the notebook contains essentially the same hearsay in written form. In answer, the State maintains preliminarily that Graves' objection to the admission of written and oral hearsay was preserved for appeal only insofar as it was based on the business records exception of Maryland Code (1974, 1989 Repl.Vol.) § 10–101 of the Courts & Judicial Proceedings Article. Next, even if the other grounds were preserved for review, the State asserts that the evidence at issue is not hearsay because it was not admitted for the truth of the matter asserted, but rather, was properly admitted for the limited purpose of showing how the police came to assemble a photographic array containing Graves' picture. Finally, the State claims that even if found to be inadmissible hearsay, the admission of this evidence was harmless error, given the two victims' unequivocal identifications of Graves.

On the preservation issue, the Court of Special Appeals held that "[t]he only issue properly before this Court is whether Officer Reynolds' oral and written statements were admissible under the 'business record' exception to the hearsay rule." 94 Md.App. at 677, 619 A.2d at 136. We disagree in part. Defense counsel made a general objection during Officer Reynolds' hearsay testimony, prior to the introduction of the officer's notebook. Hence, all grounds were preserved as to that testimony. Rule 4–323(a) provides in pertinent part:

"The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs. The court shall rule upon the objection promptly."

*See Ali v. State,* 314 Md. at 306, 550 A.2d at 930 ("when the trial court does not request a statement of the grounds for an

on Rules of Practice and Procedure. The new hearsay rule is codified as Rule 5–802, and the definition of hearsay is found at Rule 5–801(c). The Rules in Title 5 take effect July 1, 1994 and apply in all trials and hearings commenced on or after that date, except that no evidence is to be admitted against a defendant in a criminal action in proof of a crime committed prior to July 1, 1994, unless the evidence would have been admissible under the law and the Rules in effect on June 30, 1994. 21:1 Md.R. 1–23 (January 7, 1994).

objection, a general objection is sufficient to preserve all grounds which may exist.")

## III

Graves objects to the introduction of the evidence in question on both state evidentiary grounds and constitutional grounds. Because we shall hold that the trial court committed reversible error in admitting the extrajudicial statements under our law of evidence, we will not address the petitioner's contentions based upon the Confrontation Clauses of the Sixth Amendment to the Constitution of the United States and Article 21 of the Maryland Declaration of Rights. But *see Simmons v. State,* 333 Md. 547, 636 A.2d 463 (1994).

It is well established that a relevant extrajudicial statement is admissible as nonhearsay when it is offered for the purpose of showing that a person relied on and acted upon the statement and is not introduced for the purpose of showing that the facts asserted in the statement are true. *Jones v. State,* 310 Md. 569, 588, 530 A.2d 743, 752 (1987), *vacated on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988); *Greenwald v. State,* 221 Md. 245, 256, 157 A.2d 119, 125, *cert. denied,* 363 U.S. 721, 80 S.Ct. 1599, 4 L.Ed.2d 1521 (1960); *Tribull v. Tribull,* 208 Md. 490, 497-98, 119 A.2d 399, 403 (1956); *Rosenberg v. State,* 164 Md. 473, 477, 165 A. 306, 307 (1933); *Harford Nat. Bank v. Rutledge,* 124 Md. 46, 58, 91 A. 790, 795 (1914); *Mertens v. Mueller,* 122 Md. 313, 316, 89 A. 613, 615 (1914); *Eareckson v. Rogers,* 112 Md. 160, 168, 75 A. 513, 516–17 (1910); 2 *McCormick on Evidence* § 249, at 103 (John W. Strong ed., 4th ed. 1992); 6 L. McLain, *Maryland Evidence* § 801.9 (1987). One of the frequent applications of the general rule is found in the proper admission in criminal cases of extrajudicial statements relied upon by the police which are relevant on issues of probable cause, lawfulness of arrest and search and seizure where evidence is offered that was obtained as a result of the search for evidence. *Farrow v. State,* 233 Md. 526, 532–33, 197 A.2d 434, 437–38 (1964). Although such extrajudicial statements are relevant to the legal issue which is presented to the trial judge as to whether

such evidence is admissible, the probative value of that evidence must be weighed against its undue prejudice to the defendant in determining its admissibility before the trier of the fact, either trial judge or jury, on the question of guilt or innocence. Accordingly, we observed in *Farrow:*

"We note that in many cases coming before this Court where the lawfulness of an arrest and of a search incidental thereto are in issue, direct evidence to show the basis upon which the arresting officers acted either is not offered at all, or is alluded to guardedly as 'information received' or in some other and equally uninformative manner (doubtless designed to avoid an objection that it is hearsay), or is actually excluded as hearsay. On the question of the guilt or innocence of the defendant it clearly is hearsay and hence is inadmissible; but on the issues of probable cause and the lawfulness of arrest and of the admissibility of evidence obtained through any search made in connection with the arrest, such testimony, even if hearsay, is directly relevant and is admissible. Therefore, the determination of the admissibility of evidence which is dependent upon the lawfulness of an arrest should be made by the trial judge as a preliminary matter quite apart, of course, from the question of the guilt or innocence of the accused; and if the case is being tried before a jury, such a matter should be heard out of the presence of the jury. Such a question may be raised, before trial by a motion to exclude any evidence claimed to have been improperly obtained."

*Id.* Professor McCormick has likewise said:

"In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or a search or seizure, by stating that he did so 'upon information received' and this of course will not be objectionable as hearsay, *but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay.*"

*McCormick on Evidence* § 248, at 587 (Edward W. Cleary ed., 2d ed. 1972) (footnotes omitted). This important distinction between the relevance of such extrajudicial statements on the legal issue of admissibility of evidence and their relevance on the issue of guilt or innocence presented to the trier of fact was emphasized by the Court of Special Appeals in *Purvis v. State*, 27 Md.App. 713, 343 A.2d 898 (1975). In that case the defendant's conviction by a jury of distribution of heroin was reversed because the trial court permitted testimony by an undercover police agent, who had purchased heroin from the defendant, that he decided to attempt to make the purchase because he had been told by a confidential informant that the defendant was selling heroin. The testimony of the agent submitted to the jury the out-of-court declaration of an unknown informant that the defendant was selling heroin. The fact that the defendant was a heroin dealer was the very object that the prosecution had undertaken to establish. Thus, the Court of Special Appeals found the statement to be "of misleading probative force which tended to influence the trier of facts to believe that before Purvis' contact with the officers he was already a dealer in heroin and thus more likely to have sold the drug to the detectives as charged." *Id.* at 725, 343 A.2d at 904.

This limitation on the admission of extrajudicial statements relied upon to justify police conduct is in accord with the well-settled rule that the trial court, in its discretion, may exclude relevant evidence if it believes that the probative value of the evidence is substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury. *Briggeman v. Albert*, 322 Md. 133, 138, 586 A.2d 15, 17 (1991); *Hunt v. State*, 321 Md. 387, 425, 583 A.2d 218, 236 (1990), *cert. denied* —— U.S. ——, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991); *State v. Watson*, 321 Md. 47, 57, 580 A.2d 1067, 1072 (1990) (on issue of whether defendant had a peaceful or non-violent character in prosecution for first degree murder, reversible error to admit evidence of defendant's prior conviction for second-degree rape; probative value of defendant's conviction for having consensual intercourse with 13–year–old

girl was outweighed by the high potential for unfair prejudice); *appeal after remand,* 92 Md.App. 494, 608 A.2d 1285 (1992); *Bedford v. State,* 317 Md. 659, 676, 566 A.2d 111, 119 (1989); *Wilson v. Morris,* 317 Md. 284, 289, 563 A.2d 392, 394 (1989); *State v. Allewalt,* 308 Md. 89, 102, 517 A.2d 741, 747–48 (1986); *Cross v. State,* 282 Md. 468, 474, 386 A.2d 757 (1978); *Doxen v. State,* 151 Md. 118, 123, 134 A. 166, 168 (1926) (in prosecution of attorney for embezzlement of money received as agent of mortgagor, question as to whether mortgagor had alleged in an injunction suit that accused was agent of mortgagee was improper, as it tended to confuse issue that jury had to determine in criminal case); *Capron v. Adams,* 28 Md. 529, 544–45 (1868) (in action for negligence against consignees for deficiency arising out of sale of beef, question whether consignor could have protected himself from loss if consignees had advised him of depressed market was "irrelevant and calculated to mislead the jury" where it already was established that consignee had no duty to notify the consignor of depreciated value of beef); *Mitchell v. Montgomery,* 88 Md.App. 542, 558, 596 A.2d 93, 101 (1991) (reversible error to admit plaintiff-pedestrian's positive tests for cocaine and PCP, where expert could not state with a reasonable degree of medical certainty whether plaintiff was under the influence when he was struck by bus; marginal probative value of drug test results was outweighed by prejudice resulting from jury's association of plaintiff with illegal drugs); *Myers v. Celotex Corp.,* 88 Md.App. 442, 454, 594 A.2d 1248, 1254 (1991) (error for court to exclude "product identification" evidence where such evidence had great probative value and no discernible prejudice), *cert. denied,* 325 Md. 249, 600 A.2d 418 (1992); *Billman v. State Deposit,* 88 Md.App. 79, 127, 593 A.2d 684, 707, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991); *Jackson v. State,* 87 Md.App. 475, 485, 590 A.2d 177, 182 (1991); *Banks v. State,* 84 Md.App. 582, 591–92, 581 A.2d 439, 444 (1990) (prejudicial effect of admitting photographs of defendant holding handgun outweighed any probative value to establish how police identified defendant); *Wills v. State,* 82 Md.App. 669, 678–79, 573 A.2d 80, 84–85 (1990) (reversible error for court to

admit evidence of defendant's post-arrest, pre-*Miranda* silence to impeach alibi; potential for unfair prejudice outweighed the evidence's slight probative value); *K–Mart Corp. v. Salmon,* 76 Md.App. 568, 586, 547 A.2d 1069, 1078 (1988), *cert. denied,* 314 Md. 496, 551 A.2d 867 (1989); *Exxon Corp. v. Yarema,* 69 Md.App. 124, 170–72, 516 A.2d 990, 1013–15 (1986), *cert. denied,* 309 Md. 47, 522 A.2d 392 (1987); *Blondes v. Hayes,* 29 Md.App. 663, 672, 350 A.2d 163, 167 (1976) (reversible error to admit testimony that source of purchase money in a business dealing was proceeds obtained as a result of daughter's brain injury from an accident; evidence was "irrelevant for the most part and unduly prejudicial");[3] 5 L. McLain, *Maryland Evidence* § 403.1 (1987); 1 *McCormick on Evidence* § 185 (John W. Strong ed., 4th ed. 1992).

■ In the instant case, when Officer Reynolds' testimony that Trusty told him that Graves was his accomplice was offered before the jury, its only possible relevance as nonhearsay at the guilt/innocence stage was to demonstrate that the investigating officer relied on that information when he included the petitioner's photograph among those assembled for a photographic array to be viewed by the assault victims. That conduct by the police officer would have been just as effectively explained by testimony that his selection of the photographs was based "on information received." When that limited probative value is weighed against the unfair prejudice to the petitioner because of the likelihood that the jury would misuse that information as substantive evidence of guilt, we hold that the trial judge abused his discretion in admitting the testimony.

We also hold that the trial court erred in admitting the officer's notebook as a business record under § 10–101 of the

---

3. Md.Rule 5–403, which will be effective on July 1, 1994, provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." 21:1 Md.R. 6 (January 7, 1994).

Courts and Judicial Proceedings Article. That notebook contained petitioner's name which Officer Reynolds recorded after Trusty named Graves as his accomplice. Assuming that the notebook was a police report which qualified as a business record under § 10–101(a), the extrajudicial statement of Trusty which was memorialized in the notebook should have been excluded by the trial court for the reasons explained above.

■ Therefore, if the statement was offered for the purpose of proving the truth of the matter asserted by Trusty, it was clearly inadmissible hearsay. On the other hand, if it was offered for its limited probative value to show that the officer acted upon it in arranging the photographic array, that probative value was greatly outweighed by its unfair prejudice to Graves because of the danger of misuse of the information by the jury.

## IV

■ The State contends that any error resulting from the admission of Officer Reynolds' oral or written hearsay evidence was harmless. We disagree. Under the strict standard we adopted in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976), we are unable "to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict...." Trusty's statement provided a bridge that synthesized and buttressed the identifications of Graves by Derek and David. Trusty's statement added substantial, perhaps even critical, weight to the State's case against Graves. Thus, the error in admitting the evidence was not harmless beyond a reasonable doubt.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL; COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*